STATE OF HAWAII, Plaintiff-Appellee *v.* RICHARD KAHALEWAI, Defendant-Appellant

NO. 5323

November 30, 1973

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON and KOBAYASHI, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

Defendant-appellant Richard Kahalewai was indicted for murder in the first degree under HRS §§ 702-1 and 748-1. The jury found him guilty of murder in the second degree. From a denial of his motions for judgment of acquittal, judgment notwithstanding the verdict and for a new trial, this appeal was taken.

We affirm.

Defendant appealed, specifying three citations of error. He first argues that the trial court erred in denying his motions for judgment of acquittal under Rule 29(a), HRCrP[1]

---

[1]The rule in pertinent part states:

The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or

made at the close of the prosecution's case, at the close of all evidence, and in the form of a motion for judgment notwithstanding the verdict after a verdict of guilty was returned. Second, he argues that the jury's verdict was based on insufficient evidence. In *State v. Rocker*, 52 Haw. 336, 475 P.2d 684 (1970), we distinguished between the different standards an appellate court should use in reviewing the denial of a motion for judgment of acquittal and in reviewing a guilty verdict.

As to the motion for acquittal, we have held that:

This court will not disturb the ruling of a lower court if the evidence of the prosecution is such that "a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *State v. Rocker*, 52 Haw. at 346, 475 P.2d at 690.

At the close of the prosecution's case, it had been established that about midnight on November 22, 1970, the defendant went to an apartment in the Coco Palms Hotel occupied by the victim Carole Ann McLaughlin, Tommy Morita and another couple. Shortly after he entered the apartment, a fight broke out between the defendant and Morita. The four occupants fled the apartment, followed by the defendant carrying a knife. In the parking lot below, the defendant who had been stabbed several times by Morita, stabbed the victim. An eight-inch knife blade which was imbedded in the right side of her abdomen was later removed at Queen's Hospital.

From these facts, the trial court concluded that a prima facie case had been established and that the evidence would justify a jury verdict of guilty of attempted murder in the second degree beyond a reasonable doubt. We affirm the court's denial of the motions.

The test of a criminal conviction on appeal is whether there is substantial evidence to support the verdict. *State v. Rocker, supra* at 347, 475 P.2d at 691. Defendant attempted to prove that because he was under the influence of drugs at the time, he was incapable of forming a specific intent to kill with

information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

malice aforethought, and therefore was not guilty of attempted murder.

We find the evidence adduced in this case sufficient to support the conviction.

Third, defendant contends that denial of his motion for a new trial was erroneous because the prosecutor's misstatements of evidence, statements outside the scope of the evidence, and misstatements of the law during the course of the trial had a cumulative prejudicial effect upon the jury so as to deprive the defendant of his right to a fair trial. We have held that even though a prosecutor's remarks may have been improper, any harm that might have been caused can be cured by the court's instructions to the jury. In such cases we have applied:

> . . . the ordinary presumption that the jury abided by the court's admonition to disregard the statement. "The jury is sworn to render verdict according to law, and, by our statute, must receive the law from the Court. When the Court has instructed that something which they have heard is not to be considered by them, we must presume in favor of their oath and public duty." *State v. Cavness,* 46 Haw. 470, 473, 381 P.2d 685, 686-7 (1963) (citations omitted).

On the other hand, we believe that although no single misstatement or other erroneous remark standing alone would have sufficient prejudicial weight to deprive the defendant of a fair trial, the cumulative weight of such errors may create "an atmosphere of bias and prejudice which no remarks by the trial court could erase." *Scott v. State,* 47 Ala. App. 509, ___ , 257 So.2d 369, 371 (Crim. App. 1972). On appeal we must determine whether the cumulative effect of prejudicial conduct going to the issue of guilt is so strong that it overcomes the presumption that the curative remarks of the court have rendered the prejudicial remarks harmless.

We find that taken in the context of the entire record, the prejudicial effect of the prosecutor's remarks was removed by the prompt action of the trial court, and moreover was rendered harmless by the overwhelming evidence of the defendant's guilt.

Affirmed.

*Helen B. Ryan (Ryan & Ryan* of counsel) for defendant-appellant.

*Milton B. Crotts,* Deputy Prosecuting Attorney *(Barry Chung,* Prosecuting Attorney, with him on the brief) for plaintiff-appellee.

DISSENTING OPINION OF KOBAYASHI, J.,
WITH WHOM LEVINSON, J., JOINS

I dissent.

I am of the opinion that the majority of the court did not weigh the full implications of the cumulative effect of the errors committed by the prosecutor in the case before the court. The theory of cumulative error sufficient to establish a reversal has been applied in situations where repeated errors have been committed by a prosecutor. *Scott v. State,* 47 Ala. App. 509, 257 So.2d 369 (1972); *Blue v. State,* 246 Ala. 73, 19 So.2d 11 (1944). Each error standing alone may not have had sufficient prejudicial weight to deprive the defendant of a fair trial. However, the repeated errors viewed as a whole have the cumulative effect of prejudicing the jury against the defendant to such an extent that said prejudice cannot be dissipated by the admonitions of the trial judge.

In the proper factual situation as in the instant case, this doctrine insures that a defendant will not be deprived of his right to a fair trial by the overzealous trial tactics of a prosecuting attorney. The record of the case now before the court reveals that the prosecutor did in fact make a series of errors which when considered individually may not have been sufficient to warrant a reversal. However, when viewed as a whole, the errors resulted in sufficient prejudice of the jury to warrant a reversal to preserve the right of the defendant to a fair and impartial trial.

During the course of the trial the prosecutor was cited for misstating the evidence on a number of occasions. We cite the following among several:

[MR. REGO] Q You heard Detective Young state what you told him, which he has translated into words

here in his report; you swung at Morita but missed. That Morita, you believed, had a knife hid behind his back and you tried to knock out Morita with one punch. Isn't that right?

A I heard that testimony, sir.

Q Did you tell Detective Young that on that day?

A I think that's correct. But after I was shoved.

Q You notice that in Detective Young's report, you did not — he did not testify about any shoving that was occurred?

MR. SCHUTTER: Your Honor, I'm going to ask at this time for a mistrial. If Mr. Rego insists on continuing to misstate the testimony. I direct your attention to page 1 of your Exhibit 6 where it says as he was about to talk with Carole he was shoved from the back by Morita. Now, your Honor, if Mr. Rego doesn't recite it as it is, he shouldn't be reciting it at all.

May we approach the Bench, your Honor?

THE COURT: Mr. Schutter, Mr. Rego.

(Thereupon, counsel and the court reporter approached the Bench and the following proceedings were had presumably out of the hearing of the jury.)

MR. SCHUTTER: Your Honor, Mr. Rego is referring to page 2 of Exhibit 6 — on page 1 of Exhibit 6. The shove is clearly recited by Detective Young without any question at all. That's his exhibit. He's deemed to be aware of it. Now, this misstating of the record, your Honor, in front of the jury cannot be anything but intentional.

MR. REGO: Your Honor, it was unintentional and I was referring to a different point of time. I would be glad to rephrase the question.

THE COURT: Mr. Rego, use care in forming your question.

MR. REGO: I would object, again, as to this — Mr. Schutter interrupting me in the way he does.

THE COURT: Well, he has to interrupt.

MR. REGO: I think he should approach the Bench if he's going to interrupt my statement, your Honor; nor let

me continue if he has an objection. I think it should be heard but not to make outlandish statements.

MR. SCHUTTER: I had to stop him instantly before the prejudice sinks in.

THE COURT: Would you stop misquoting evidence and be careful in forming your questions.

MR. SCHUTTER: May we have the jury admonished to disregard Mr. Rego's misquotes of the record?

May we have the question reformed?

(Thereupon, the following proceedings were had before the jury.)

MR. SCHUTTER: May we have the jury informed the question is withdrawn?

THE COURT: Members of the jury, Mr. Rego has withdrawn the question that he has just asked.

. . . .

[MR. REGO] Q You testified earlier that the time you saw the knife was after you had fallen down and you looked up at him. You said you knew he had a knife because you used common sense. "I thought I would get the knife out of his hand." And that's when you acted.

MR. SCHUTTER: Again, your Honor, I would ask the question be stricken as a total misrepresentation of the exhibit. Both of his questions. Exhibit 6 and as to the previous testimony of Mr. Kahalewai.

MR. REGO: I don't believe it is, your Honor.

THE COURT: Well, would you approach the Bench.

(Thereupon, counsel and the court reporter approached the Bench and the following proceedings were had presumably out of the hearing of the jury.)

MR. SCHUTTER: Prosecution's Exhibit 6, your Honor, is very clear on the question of the slinging of the chair.

MR. REGO: I'm not, your Honor —

MR. SCHUTTER: And it's consistent with Mr. Kahalewai's testimony, which has been misstated by Mr. Rego. There is no testimony as to the effect that he just gave.

MR. REGO: Again, your Honor, I'm not talking about

that statement. I asked him remember testifying here earlier today that you said so-and-so. That was the question. That wasn't pertaining to it, that was pertaining to testimony in the court.

MR. SCHUTTER: That statement was a misrepresentation of the evidence.

MR. REGO: My evidence is this, that he fell down, he got up. I looked at him. I knew he had a knife. And I used my common sense. I thought I would get the knife out of his hand. And that's when he acted.

MR. SCHUTTER: He didn't say that he didn't see the knife before, Mr. Rego. He had already testified to seeing the knife. And it's simply a flat misstatement of the evidence.

THE COURT: Mr. Rego, will you reframe your question.

At various times, the prosecutor introduced testimony which was outside the scope of the evidence:

[MR. REGO] Q You, upon questions by Mr. Schutter, went into your life history and, isn't it true that you blame society for many of your present ills; isn't that correct?

MR. SCHUTTER: I am going to object to that, your Honor, as irrelevant and self-serving, incapable of answering, beyond the scope of this trial.

THE COURT: Objection is sustained.

[MR. REGO] Q Mr. Kahalewai, do you blame the parole board for putting you back into prison? Isn't that right? On its decision that it made?

MR. SCHUTTER: Same objection, your Honor.

THE COURT: Objection is sustained.

[MR. REGO] Q You don't feel that the State Hospital doctors, after examining you —

MR. SCHUTTER: I am going to object as irrelevant and beyond the scope of direct examination, your Honor.

. . . .

[MR. REGO] Q Have you read what Dr. Kosta Stojanovich, Mental Health for the courts, pointed out pertaining to your character?

MR. SCHUTTER: May we approach the Bench, your

Honor?

MR. REGO: May I finish my question, your Honor?

MR. SCHUTTER: I would object to any finishing of that question, your Honor.

(Thereupon, counsel and the court reporter approached the Bench after which the following proceedings were had presumably out of the hearing of the jury.)

MR. SCHUTTER: I would like to know, your Honor, some basis under which Mr. Rego can possibly justify using some psychiatric conclusion in a pre-sentence report. And I again state for the record he is trying to intentionally create a mistrial. He knows it's improper.

MR. REGO: I don't believe it's improper if I can call Mr. Stojanovich to verify his own psychiatric view of the defendant's character, your Honor; and this statement is in the pre-sentence report; that is correct.

THE COURT: Pre-sentence report?

MR. REGO: Yes, your Honor. A mental health team that looked over the defendant.

THE COURT: Objection will be sustained.

MR. SCHUTTER: The jury be instructed to disregard the question?

THE COURT: All right.

(Whereupon, the following proceedings were had before the jury.)

THE COURT: Members of the jury, you are to disregard the last question asked by Mr. Rego.

. . . .

[MR. REGO] . . . And let me submit to you that most crimes, not only in Hawaii but on the mainland, are crimes between people that are ignorant, stupid, had a bad background.

MR. SCHUTTER: I'm going to object to going beyond the scope of the evidence. Mr. Rego does not have the right to give a psychologist's testimony based on statistics which he can't prove.

THE COURT: All right. Mr. Rego, will you remain within the confines of the evidence and the reasonable inferences from that evidence?

MR. REGO: Your Honor, yes, I would like to pursue the point in a little different way.

THE COURT: All right.

MR. REGO: The Police Department are involved with crimes. The Police Department is involved with criminals, people that cause acts. Criminals just don't pick on people, good citizenry, but —

MR. SCHUTTER: Your Honor, this has nothing to do with the evidence. Has nothing to do with the evidence and would require the proof of statistics, which are not in evidence.

THE COURT: Objection is sustained. Mr. Rego, I think you are going outside the grounds of the evidence and the reasonable inferences to be drawn from that evidence.

. . . .

[MR. REGO] . . . I must go into what the defendant testified. I have to do this. I cannot stop. I cannot stop at any point here. The defendant testified. He's been here during the trial. He's seen what happened. Talked to his attorney. Understands the procedure. State submits that he blames everyone for everything that's ever happened to him, parole board, State hospital, prison system.

MR. SCHUTTER: Again, your Honor, Mr. Rego is going far beyond the evidence. Those questions themselves were ordered stricken by the Court.

MR. REGO: The State is submitting certain things. I'm trying to make it relevant to his testimony and I will make it relevant.

THE COURT: Mr. Rego, I think the Court will sustain that objection. It has nothing to do with this case. Proceed.

And finally, the prosecutor was cited for misstating the law in the presence of the jury:

[MR. REGO] . . . The Court's instructions that will be read to you in total the theme under the influence of drugs or alcohol or both is no defense. No defense whatsoever. It's not an excuse. Unless you believe a negative intent, his ability to form an intent to stab Carole McLaughlin as,

ladies and gentlemen, he did on that night. If he's so far out, ladies and gentlemen, that he could not stab Carole McLaughlin the way that he did, and that is your belief, you must find the defendant guilty — not guilty. But the evidence doesn't show that he was that far out.

MR. SCHUTTER: Your Honor, I'm going to ask that those comments be stricken as a total misquotation from this citation of what the instruction will be. Mr. Rego has just said if he could not stab Carole McLaughlin. That's not the Court's instruction at all.

THE COURT: All right. Mr. Rego.

MR. REGO: I'll be glad —

THE COURT: The Court will strike your remarks concerning the subject part. Read the instruction.

. . . .

[MR. REGO] Thank you very much. I'm sorry I talked for a lot longer than I intended. You're a captive audience, I understand that. I will take the opportunity, however, to address you again after Mr. Schutter has given you his argument. I would like to state right now, as you listen to Mr. Schutter's argument, to please have an open mind to what I have said before you. It's the duty of defense counsel to create a reasonable doubt in your minds.

MR. SCHUTTER: I'll object to that, your Honor, ask it be stricken, and the Jury be admonished. It's not my duty to create a reasonable doubt, it's my duty to discuss the evidence.

THE COURT: All right. The Court will strike that statement. Mr. Rego, are you through?

MR. REGO: I still have a couple more statements.

THE COURT: A couple of more statements?

MR. REGO: Yes.

THE COURT: All right. Mr. Rego, please proceed.

MR. REGO: That this is a contest, ladies and gentlemen, pertaining to the defendant, what happened that night.

MR. SCHUTTER: This is not a contest, your Honor. We will ask that that be stricken.

THE COURT: All right. Be stricken.

. . . .

[MR. REGO] Detective Young wrote down exactly what the defendant told him, I submit, and has paraphrased that as best he could. Detective Young put in what was the explanatory statement, that the defendant said it was an accident. He swung at Tommy Morita and hit Carole McLaughlin. He testified here, I swung — person coming towards him, trying to keep him away. He's saying, I had the intent to swing, yes. I swung. I don't know what happened.

State submits to you, he swings at someone and hits someone else. Even if you believe his testimony —

MR. SCHUTTER: We will ask that be stricken, your Honor, and that Mr. Rego be admonished. That's not the law.

THE COURT: Mr. Rego, the Court has refused to give an instruction to that effect. In fact the Court is thinking about giving an instruction that that is an accident. If the Jury believes that the way the knife was swung and Carole got in between, that would be an accident.

. . . .

[MR. REGO] . . . It's your duty, unless you form a reasonable doubt, to come back into this courtroom and to find the defendant guilty of attempted murder in the first degree.

I am of the opinion that in this particular case, the admonitions of the trial judge did not overcome the cumulative effect of the errors committed by the prosecutor and that the conviction should therefore be reversed.