STATE OF HAWAII, Plaintiff–Appellee, v. WAYNE FUMIO PEMBERTON, also known as Wayne, Defendant–Appellant

NO. 13955

(CR. NO. 88–0911)

JULY 10, 1990

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

## OPINION OF THE COURT BY HAYASHI, J.

Following a jury trial in the Circuit Court of the First Circuit, Defendant–Appellant Wayne Fumio Pemberton (Defendant) was convicted of two counts of Assault in the Second Degree (Hawaii Revised Statutes (HRS) § 707–711(1)(d)) and one count of Carrying a Deadly Weapon (HRS § 134–51). Defendant appeals from those convictions contending that: (1) the trial court erred in allowing testimony concerning a prior incident in which Defendant allegedly used a knife, and in failing to strike that testimony once it had been given; (2) Defendant was denied a fair trial due to a continuing and deliberate course of misconduct by the prosecutor; and (3) the trial court erred by giving an erroneous jury instruction on the standard of self–defense.

After a careful review of the record, we conclude that Defendant's arguments are meritorious and warrant reversal. We therefore vacate Defendant's convictions and remand this case to the circuit court for a new trial.

## I.
## FACTUAL BACKGROUND

The charges in this case arose out of an altercation involving Defendant, Rick Reb'll (Reb'll), Mark Kafentzis (Mark), Kyle

Kafentzis (Kyle), and Kurt Kafentzis (Kurt) (collectively Kafentzis brothers).

The prosecution witnesses, the Kafentzis brothers, testified that while at Rumours nightclub on April 8, 1987, they were approached by Reb'll and Defendant, with whom Kurt testified he had had an altercation a couple of weeks earlier at another night-club. Kurt stated that as Defendant and Reb'll approached he heard Reb'll tell Defendant "pull out your knife," and heard his brother Mark respond, "No, don't pull out any knife." Reb'll then struck Mark, whereupon Kurt hit Reb'll. A security guard arrived and ordered the parties to leave the club, escorting Defendant and Reb'll out first.

Kyle testified that near the entrance to the club, he saw Defendant reach into the bag he was carrying. Fearing that Defendant was going to pull out a knife, Kyle struck Defendant over the security guard's shoulder. Kyle testified that once outside Defendant attacked him with a knife. During the struggle that ensued, Defendant stabbed Kyle in the forearm and upper arm. Kyle stated that Mark then grabbed Defendant's arm from behind, and while they were wrestling, both Mark and Defendant were stabbed. Defendant then retreated into the nightclub.

Defendant testified that at another nightclub about a month prior to this incident, the Kafentzis brothers had initiated a fight with him, resulting in his being punched in the face several times. After noticing at least two of the Kafentzis brothers driving by his apartment a few days later, Defendant purchased a knife. Defendant testified that he kept the knife in a black bag, which he carried when he was out walking at night.

On the night in question, Defendant said that after seeing the Kafentzis brothers in the nightclub, he instructed a hostess at the front desk to call security. By the time Defendant returned to where Reb'll was standing, the Kafentzis brothers were approaching them. Reb'll testified that the Kafentzis brothers first verbally

harassed him and Defendant, and then began punching them. Defendant testified that a security guard arrived, told them to leave and began pushing them out, despite his telling the guard that the Kafentzis brothers intended to beat them up. On the way out, Defendant felt a punch graze his face, and once outside, he was punched hard in the face and fell to the ground. While on the ground, Defendant pulled a knife out of his bag. When he stood up, Mark tackled him, grabbed his hand and attempted to cut him. Defendant testified that in struggling to keep the knife away from his body, first he and then Mark were stabbed. Defendant recalled that Kyle then tackled him, but he did not remember stabbing Kyle.

The jury returned a verdict of guilty on all counts charged, and the court thereafter entered judgment against Defendant. Defendant timely appealed.

## II.
## TESTIMONY OF PRIOR INCIDENT

Defendant first contends that the trial court erred in allowing the introduction of testimony regarding a prior incident in which Defendant allegedly used a knife. We agree.

### A.

On cross-examination, the prosecutor questioned Defendant with regard to whether he had used the knife recovered in this case prior to April 8, 1987:

Q. So you're saying it's possible that you had carried *that* knife on other occasions to other nightclubs?

A. I'm not saying that is possible.

Q. Are you denying it?

A. There's no reason for me not to.

Q. Well, this is the first time you ever used *that* knife?

A. Yes, it was.

Q. Was this the first time you ever used *the* knife on anyone?

A. Yes, it was.

Q. March 21st, 1987, do you know a Mark Newcomb?

MR. PILA PATEA: May we approach the bench. Transcript of February 27, 1989 at 54 (emphasis added).

During the bench conference that followed, the prosecutor expressed his intent to use Mark Newcomb's (Newcomb) testimony to impeach Defendant on whether or not he had carried a knife before. Newcomb claimed that Defendant had attacked him with a knife at a nightclub on March 21, 1987. The court sustained defense counsel's objection to this line of questioning, apparently finding the incident covered by Defendant's Motion in Limine No. 3, which excluded any evidence of Defendant's prior involvement with the police.

After the defense rested, however, the prosecutor called Newcomb as a rebuttal witness. Although the court had previously ruled the March 21, 1987 incident irrelevant during cross–examination of Defendant, the court allowed Newcomb to testify apparently based on the following representations made by the prosecutor in his offer of proof:

MR. KUGIYA: Your Honor, as indicated, I did not intend to call Mr. Newcomb in our case in chief because *his testimony becomes relevant only when Defendant has taken the stand and the answers which he has given on the stand; namely, that he's denied that he doesn't carry a knife with him to nightclubs.* On this occasion which Mr. Newcomb had an altercation with Defendant, Defendant fights with him and pulls out a knife, just like

in the instant case. It becomes definitely relevant based
on the answers given by this witness.

Transcript of February 27, 1989 at 62–63 (emphasis added).

Newcomb then testified in some detail about the fight he claimed Defendant and Reb'll had started with him on March 21, 1987. He further testified that Defendant attacked him, brandishing a knife retrieved from Defendant's handbag. Newcomb's uncontradicted testimony indicated that the knife Defendant had allegedly attacked him with was a different knife than the one used in the present case.

Defense counsel thereafter moved to strike Newcomb's entire testimony arguing, *inter alia*, that when Newcomb's testimony revealed that a different knife was used, his testimony became irrelevant for impeachment purposes, and became instead improper character evidence. Although the court initially allowed Newcomb's testimony apparently believing both incidents involved the same knife, the court denied Defendant's motion to strike the testimony even after it learned that different knives were involved.

## B.

Hawaii Rules of Evidence (HRE) 404(b) prohibits the use of evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show that he acted in conformity therewith." In generally excluding character evidence under Rule 404, the legislature recognized the inherent danger of such evidence: "'Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion.'" HRE 404, Commentary (quoting Federal Rule of Evidence 404 advisory committee's note).

In enacting subsection (b), the legislature specifically sought to preclude the admission of evidence of specific instances of conduct "when the only relevance is in the two–step inference from 'other' conduct to general character and then 'to show that he acted in conformity therewith' on the occasion in question." HRE 404, Commentary. Under subsection (b), evidence of other crimes, wrongs, or acts "may, however, be admissible where such evidence is probative of any other fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident." HRE 404(b). "But its acknowledged tendency to distract the trier of fact compels the trial court to weigh the evidence and to exclude it 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *State v. Pinero*, 70 Haw. 509, 517, 778 P.2d 704, 710 (1989) (quoting HRE 403).

## C.

The basis of the court's ruling with respect to Newcomb's testimony is unclear from the record. Although the court appears initially to have believed the same knife had been involved in both instances and to have allowed the testimony for impeachment purposes, it did not strike that testimony when it became clear that the knife used in the prior alleged incident differed from the one used in the instant case; when that became evident, Newcomb's testimony became irrelevant for impeachment purposes. *See* HRE 401. On appeal, the State asserts that Newcomb's testimony is highly probative of Defendant's state of mind and rebuts Defendant's claim of self–defense. The State, however, offers no plausible rationale for the admission of this evidence.

We conclude that under HRE 404(b) and 403, Newcomb's testimony that Defendant had previously provoked a fight using a knife, was clearly inadmissible as it was not relevant for any purpose permissible under 404(b) and could only prejudice Defendant by showing Defendant's propensity towards provoking fights with a knife: the very inference Rule 404 was meant to prohibit.

The court, therefore, erred in failing to strike Newcomb's testimony once the court discovered that the knives involved were different. Given the highly prejudicial nature of Newcomb's detailed testimony regarding the prior incident and the fact that this case turns on the credibility of the Kafentzis brothers as opposed to the credibility of Defendant and Reb'll, we cannot say this error was harmless beyond a reasonable doubt.

## III.
## PROSECUTORIAL MISCONDUCT

Defendant next contends that the prosecutor engaged in a course of conduct intended to bring inadmissible evidence to the jury's attention, regardless of whether the evidence had been excluded by motion in limine or prior objections or court rulings. Defendant argues that this deliberate and continuing course of misconduct deprived Defendant of a fair trial. We agree.

### A.

Defendant alleges numerous acts of misconduct. We find that a number of these acts, while not individually sufficient to warrant reversal, cumulatively prejudiced Defendant to the extent of denying him a fair trial. The trial court was continuously forced to sustain objections by defense counsel due to the prosecutor's repeated

attempts to bring inadmissible evidence to the jury's attention as is evidenced by the following examples.

During cross–examination of Karl McGibboney, a security guard at the nightclub, the prosecutor, despite being warned by the court earlier to avoid eliciting responses from witnesses as to what they felt or thought, attempted to elicit evidence of Defendant's character by questioning McGibboney as follows:

BY MR. KUGIYA:

    Q.   Mr. McGibboney, you were talking about your experience and training as a security officer. Isn't it true that it appeared to you that the defendant had been in the same situation before?

Transcript of February 24, 1989 at 30. Although the court sustained defense counsel's objection, this question and other similar broad and leading questions used by the prosecutor had the effect of suggesting that Defendant had a history of fighting.

Prior to the prosecutor's redirect examination of Officer Andrew Tsukano, the court ruled that Officer Tsukano would be allowed to testify that Defendant had also filed a complaint against the Kafentzis brothers on the night of the incident in question. The prosecutor stated that this inquiry would open the door for questioning regarding the officer's state of mind as to why he arrested Defendant and not the Kafentzis brothers. The court rejected this line of inquiry as irrelevant. Despite this ruling, the prosecutor began his redirect examination as follows:

BY MR. KUGIYA:

    Q.   Officer, you said that the defendant made a complaint against the Kafentzis brothers?

    A.   Yes, he did.

    Q.   Why didn't you arrest the Kafentzis brothers?

    MR. PILA PATEA:  I'm going to object. This is one we've covered.

    THE COURT:  Sustained.

MR. KUGIYA: Well, Your Honor, he asked — that the complaint was made, he should be explained why he didn't take action.

THE COURT: Objection is sustained. Irrelevant. Transcript of February 22, 1989 vol. II at 20. The record reveals a multitude of other sustained objections.[1]

Defendant argues that although the court sustained objections to the prosecutor's conduct and struck inadmissible testimony, the jury was made aware of that testimony and in fact may have been led to believe that defense counsel was trying to suppress damaging evidence because of the numerous objections the prosecutor forced defense counsel to make. Defendant argues that the prosecutor's conduct, individually and cumulatively, denied him a fair trial.

## B.

Generally, a prosecutor's improper remarks are considered cured by the court's instructions to the jury, because it is presumed "'that the jury abided by the court's admonition to disregard the statement.'" *State v. Kahalewai*, 55 Haw. 127, 129, 516 P.2d 336, 338 (1973) (quoting *State v. Cavness*, 46 Haw. 470, 473, 381 P.2d 685, 686 (1963)). However, "although no single misstatement or other erroneous remark standing alone [may] have sufficient prejudicial weight to deprive the defendant of a fair trial, the cumulative weight of such errors may create 'an atmosphere of bias and prejudice which no remarks by the trial court could erase.'"

---

[1] For example, the prosecutor forced defense counsel to object in the presence of the jury when he attempted to offer into evidence a physician's report even though it had not been included on the exhibit list given to the court; the court subsequently excluded the report, apparently because it was not listed and because it constituted hearsay. Although excluded, the report's existence was thereby made known to the jury.

*Kahalewai*, 55 Haw. at 129, 516 P.2d at 338 (quoting *Scott v. State*, 47 Ala. Crim. App. 509, 512, 257 So. 2d 369, 371 (1972)).

The issue on appeal, therefore, is "whether the cumulative effect of prejudicial conduct going to the issue of guilt is so strong that it overcomes the presumption that the curative remarks of the court have rendered the prejudicial remarks harmless." *Kahalewai*, 55 Haw. at 129, 516 P.2d at 338; *see also State v. Sugimoto*, 62 Haw. 259, 614 P.2d 386 (1980) (prosecutorial misconduct warrants reversal only where it prejudices defendant so as to deny him a fair trial).

"'The duty of the prosecution is to seek justice, to exercise the highest good faith in the interest of the public and to avoid even the appearance of unfair advantage over the accused.'" *State v. Quelnan*, 70 Haw. 194, 198, 767 P.2d 243, 246 (1989) (quoting *State v. Miller*, 67 Haw. 121, 122, 680 P.2d 251, 253 (1984)). In the instant case, the record is replete with examples of the prosecutor's disregard for Defendant's right to a fair trial. While the trial court acted properly in trying to cure any possible prejudice, the fact that defense counsel was repeatedly forced to object and the court repeatedly forced to sustain those objections and to issue cautionary instructions is likely to have had the reverse effect of focusing the jury's attention on that evidence and the fact that it was being suppressed. *Cf. State v. Kahinu*, 53 Haw. 536, 498 P.2d 635 (1972), *cert. denied*, 409 U.S. 1126 (1973).

Although it is difficult to assess misconduct based on a series of actions and to assess the exact import of those actions in full, nevertheless, the number of instances and the tenor of the exchange between judge and counsel evince a premeditated pattern of improper questioning and an effort to alert the jury to the existence of inadmissible evidence. We therefore conclude that although no single prosecutorial act deprived Defendant of a fair trial, the cumulative effect of the prosecutor's improper conduct was so prejudicial as to deny him a fair trial.

## IV.
## JURY INSTRUCTIONS

Finally, Defendant contends that the trial court erred in giving the State's Supplemental Jury Instruction No. 4 because he claims it incorrectly states the law of self–defense. We agree.

### A.

In reviewing jury instructions, "the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent or misleading." *State v. Halemanu*, 3 Haw. App. 300, 306, 650 P.2d 587, 592 (1982) (citations omitted). The challenged instruction in this case reads as follows:

> The reasonableness of the Defendant's belief shall be determined from the viewpoint of a reasonable person in the Defendant's position under the circumstances *shown in the evidence*.

Record at 193 (emphasis added).

Under Hawaii law, the standard for judging the reasonableness of a defendant's belief for the need to use deadly force is determined from the point of view of a reasonable person in the defendant's position *under the circumstances as he believed them to be. State v. Estrada*, 69 Haw. 204, 738 P.2d 812 (1987). The jury, therefore, must consider the circumstances as the defendant subjectively believed them to be at the time he tried to defend himself.

Defendant argues that the State's instruction given to the jury allowed the jury to disregard Defendant's perception of the alleged incident and the reasonableness of his actions under those circumstances, directing them to apply an objective standard instead. The instruction given in this case allowed the jury to consider all the

circumstances shown by the evidence, regardless of whether or not Defendant was aware of them. We find, therefore, that the instructions given to the jury, when read and considered as a whole, were misleading and erroneous.

"'Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.'" *State v. Pinero*, 70 Haw. 509, 527, 778 P.2d 704, 716 (1989) (quoting *Turner v. Willis*, 59 Haw. 319, 326, 582 P.2d 710, 715 (1978)). Because it is possible that the jury here did consider circumstances shown in the evidence but unknown to Defendant, and because this instruction was central to Defendant's main defense, we cannot conclude from the record as a whole that the error was not prejudicial.

The convictions are vacated, and the case is remanded to the circuit court for a new trial.

*Iris M. Arakawa*, Deputy Public Defender, for Defendant–Appellant.

*Caroline M. Mee* (*James M. Anderson* with her on the brief), Deputy Prosecuting Attorneys, for Plaintiff–Appellee.