4 P.3d 523

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Stephanie CHUN, Defendant–Appellant,**

and

**William Lile, Defendant**

**No. 21772.**

Intermediate Court of Appeals of Hawai'i.

June 16, 2000.

Stuart N. Fujioka, on the briefs, for Defendant–Appellant.

James M. Anderson, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., WATANABE, and LIM, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Stephanie Chun (Chun) appeals the circuit court's June 29, 1998 Judgment convicting Chun of Promoting a Dangerous Drug in the Third Degree, Hawai'i Revised Statutes (HRS) § 712–1243 (1993 and Supp.1997), and sentencing her to five years' imprisonment with a mandatory minimum of thirty days. We affirm.

In this opinion, we conclude that the "harmless beyond a reasonable doubt" standard applies to each and every error at trial by the court. Therefore, each error and all errors at trial by Plaintiff–Appellee State of Hawai'i (the State) and/or the court mandate a new trial, unless it is concluded that the error is harmless beyond a reasonable doubt and that the errors are cumulatively harmless beyond a reasonable doubt.

We also conclude that as used in HRS § 712–1243(3), the word "convicted" means "found guilty" rather than "found guilty and sentenced."

## BACKGROUND

The police obtained a warrant to search 1402 Pi'ikoi Street, Apartment No. 203, for gambling devices, gambling records, currency from gambling, gambling device components, and documents to try and establish ownership. Upon entering the apartment on October 23, 1997, Police Officer Kaipo Miller (Officer Miller) saw about six people in the living room sitting on the floor. Officer Miller then proceeded to one of the two bedrooms and saw Chun and co-defendant William Lile (Lile) sitting "straight up" on a black leather couch not doing anything. Lile was sitting on the far left cushion. Chun was sitting to Lile's right on the center cushion of the couch. In response to an inquiry by the police, Lile stated that he worked in the apartment as a cashier, and Chun responded that she was unemployed.

In searching the bedroom, the police found a manila envelope and just over $500 in assorted bills, mostly twenties, under the couch cushion on which, according to the testimony of Police Officer Paul Nobriga (Officer Nobriga), Lile had been seated. The manila envelope contained four small, clear plastic packets containing crystal methamphetamine.

While searching the right side of the couch which was opposite from where Lile had been sitting and where the manila envelope had been found, and next to the cushion on which Chun had been sitting, Police Officer Bruce Matthews (Officer Matthews) "moved maybe the pillow or another item or two" and found a "clear plastic [Z]iploc packet with the red heart-shaped designs[.]" Officer Nobriga testified that he was shown where this packet was recovered as being "[s]omewhere within this—this child restraint seat here and this bag I believe kind of stuffed in-between them[.]" This packet is State's Exhibit No. 5, and it contained .349 grams of crystal methamphetamine.

In the bedroom where Chun and Lile were found, the police also recovered a black vinyl or leather purse with a shoulder strap. Police Officer Eric Adams found the purse "towards the Piikoi [Pi'ikoi] wall on the floor in-between the couch and I believe it was the mattress." Inside the purse were a glass pipe containing what appeared to be crystal methamphetamine residue and some unsigned handwritten letters. These letters appeared to be of a boyfriend-girlfriend nature discussing personal relationship matters and were addressed to a person named Bill. Knowing that Lile and Chun had been boyfriend-girlfriend for the "last year or so[,]" and that "everybody knows [Lile] as Bill[,]" Officer Nobriga deduced that the letters were written by Chun to Lile. Officer Nobriga "[t]hen ... made a determination that ... it was [Chun]'s purse and ... had her placed under arrest for that drug offense." Officer Nobriga also had Lile arrested after discovering the manila envelope containing money and drugs under the couch cushion where Lile was seated.

When Chun was searched, $242 in currency was found in her pants pocket. When

Lile was searched, the police recovered from his pants pocket five small Ziploc packets (State's Exhibit No. 4), one of which had a red hearts design on it matching the red hearts design on the bag that was found next to Chun on the couch.

Prior to the jury trial, Chun moved, in limine, to exclude evidence of the $242 found on her person. The court initially granted the motion, but noted that its ruling "may change depending upon what happens." During the trial, the State moved for reconsideration of the ban of the evidence of the $242. The State argued that the "money is important to establish a nexus in a constructive possession case." Chun argued, "The money does nothing to show when—that [Chun] possessed any of the drugs in question. It's just—it's money in her pocket. There was gambling going on. That, too, may raise an inference which is unfair to my client even though she's not charged with gambling." Lile argued that

I thought [the money found on each defendant] should not be admitted into evidence because I think it raises an inference with the jury that this is more than a possession case, that it's a distribution case, and I think once that inference is raised, if the jury believes that both of these people are selling drugs, I think they are much more likely to convict them on possession on the theory that they've probably done something much more serious and we're willing to convict them of something lesser just so that they don't walk.

The court granted the motion for reconsideration and admitted the evidence.

The only evidence of the $242 was the following:

Q. [Deputy Prosecuting Attorney (DPA)] ...
Okay. After that packet with the heart-shaped design was recovered, what did you do?

A. [Officer Matthews] I was called by Officer Malcolm Lutu to the living room area and he handed me $242.00 in United States currency recovered from Officer April Daniels from Stephanie Chun's pocket. And since it was United States currency, I handed it to Officer Smith.

In its closing arguments, the State never mentioned the $242. The sole mention of the $242 during closing arguments was by Chun's counsel as follows:

Reference was also made in this trial to [Chun] possessing $242. That causes me some concern because, as the State said, this case is about gambling, money, and drugs. But we don't know where that money came from. This is a gambling place. She's not charged with gambling. She's charged with possession of drugs, for stuff that we don't know where the original position is. We just know that one of the packets was in the sofa in a place where it's very hard to believe she would know that it's there, much less have the intent to take control over it.

Count I charged Lile with Promoting a Dangerous Drug in the Second Degree. Counts II, III, and IV each charged Chun with Promoting a Dangerous Drug in the Third Degree (knowingly possessing the dangerous drug methamphetamine). Count V charged Chun with Unlawful Use of Drug Paraphernalia.

In its rebuttal argument, the State told the jury that the counts were for the following:

State's exhibit number 5 is Count II, possession of methamphetamine in any amount. This is the stuff that was found on the couch right next to Stephanie Chun. Like I told you, the pipe gets you two counts. The first one is for the residue, the little white stuff that you see in here. That is Count III. I can't write so nicely when it's up here. But the residue here, .078 grams, is methamphetamine in any amount. That's what's charged as Count number III. Now, the pipe, ..., that is count number V.... The last thing that we have is the rest of the drugs that was [sic] found in the purse. Okay, this is Count number IV, State's exhibit number 7.

The court instructed the jury that "[t]he law recognizes two kinds of possession, actual possession and constructive possession" and told the jury the definition of both kinds of possession.

On April 16, 1998, the jury found Chun guilty of Count II, but was not able to reach a verdict as to Counts III, IV, and V. On April 27, 1998, Chun filed a Motion for Judgment of Acquittal, Judgment Notwithstanding Verdict and/or New Trial in Count II; Motion for Judgment of Acquittal and/or Dismissal with Prejudice in Counts III, IV, and V. The court granted Chun's motion with respect to Counts III, IV, and V, dismissing them with prejudice. The court denied Chun's motion with respect to Count II. On June 25, 1998, Chun filed a Motion for Conditional Discharge based on HRS § 712–1255 (1993). The court sentenced Chun on June 29, 1998.

## STANDARD OF REVIEW

■ We conclude that the "harmless beyond a reasonable doubt" standard applies to each and every error at trial by the State or by the court. Therefore, each error and all errors at trial by the State and/or by the court mandate a new trial, unless it is concluded that the error is harmless beyond a reasonable doubt and that the errors are cumulatively harmless beyond a reasonable doubt. Our basis for this conclusion is as follows.

In *State v. Suka,* 79 Hawai'i 293, 298, 901 P.2d 1272, 1277 (App.), *cert. denied,* 79 Hawai'i 341, 902 P.2d 976 (1995),[1] this court recognized a class of trial errors not subject to the "harmless beyond a reasonable doubt" standard.

In *State v. Malufau,* 80 Hawai'i 126, 130–31, 906 P.2d 612, 616–17 (1995), the Hawai'i Supreme Court stated,

In *State v. Suka,* ... the Intermediate Court of Appeals (ICA) held that, when an error is not of constitutional magnitude, ordinarily, "[t]he harmless error standard under HRPP Rule 52 requires that the court examine the entire record to determine whether the error itself had substantial influence upon the jury's verdict." The ICA contrasted this standard with the "harmless beyond a reasonable doubt" standard, which it held was applicable only to violations of constitutional rights. "In applying the [']harmless beyond a reasonable doubt['] standard[,] the court is required to examine the record and determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction." Because a defendant may not be convicted of an offense except upon proof establishing his or her guilt beyond a reasonable doubt, we question whether a standard more lenient than the "harmless beyond a reasonable doubt" standard is ever appropriate in criminal cases....

Under either standard [harmless error or harmless beyond a reasonable doubt], as a general rule, "[w]here there is a wealth of overwhelming and compelling evidence tending to show the defendant guilty beyond a reasonable doubt, errors in the admission or exclusion of evidence are deemed harmless."

(Footnote and citations omitted.)

Two days later, in note 12 of *State v. Holbron,* 80 Hawai'i 27, 32–33 n. 12, 904 P.2d 912, 917–18 n. 12 (1995), the Hawai'i Supreme Court stated, "To the extent that this language in *Suka* implies a standard of review under [Hawai'i Rules of Penal Proce-

---

1. *State v. Suka,* 79 Hawai'i 293, 298, 901 P.2d 1272, 1277 (App.), *cert. denied,* 79 Hawai'i 341, 902 P.2d 976 (1995), outlined the existing standards dealing with reversible error at trial and the categories of errors that are subject to each standard. *Suka* explained that there are three standards to determine whether or not an error at trial is harmless. The four categories of errors are as follows:

   1. The "never harmless error" standard applies to the category of errors which involve constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error. Such a case would be the right to an impartial judge.

   2. The "harmless beyond a reasonable doubt" standard applies to the category of errors which involve the violation of all other federal and/or state constitutional rights.

   3. The "harmless beyond a reasonable doubt" standard also applies to the category of errors involving a limited number of non-constitutional rights such as the use of preemptory challenges.

   4. The "harmless error" standard applies to the category of errors which are not of constitutional magnitude and which may be deemed harmless unless the violation substantially affected the verdict or outcome of the case.

dure Rule] 52(a) other than 'harmless beyond a reasonable doubt,' we expressly disapprove and overrule it." [2]

In *Holbron*, the trial court instructed the jury that if it did not find the defendant guilty of attempted murder, "it could find him guilty of the included offense of attempted reckless manslaughter," an offense which the Hawai'i Supreme Court determined did not exist. *Id.* at 29, 904 P.2d at 914. One of the issues on appeal, therefore, was whether the erroneous instruction required the vacatur of the conviction and a remand for a new trial.

▮ The Hawai'i Supreme Court stated the rule that erroneous instructions are presumptively harmful and a ground for reversal, unless it affirmatively appears from the record as a whole that the error was not prejudicial. The court also stated that the real question is whether there is a reasonable possibility that error might have contributed to conviction. If there is such a reasonable possibility, "then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside." *Id.* at 32, 904 P.2d at 917. This is the "harmless beyond a reasonable doubt" standard of review. *State v. Cabrera*, 90 Hawai'i 359, 978 P.2d 797 (1999). The Hawai'i Supreme Court held that because in reaching a unanimous guilty verdict as to the attempted murder charge the jury could not have reached or considered the disputed instruction or the nonexistent offense, there was no reasonable possibility that the error might have contributed to the defendant's conviction and, thus, "that the giving of the erroneous disputed jury

instruction was harmless beyond a reasonable doubt." *Holbron*, 80 Hawai'i at 47, 904 P.2d at 932.

In *Holbron*, the court cited *State v. Heard*, 64 Haw. 193, 638 P.2d 307 (1981). In *Heard*, the Hawai'i Supreme Court stated in relevant part as follows:

Even were we to assume that the court erred in admitting hearsay testimony, the error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction.

64 Haw. at 194, 638 P.2d at 308 (citations omitted).

In other words, *Holbron* is governing precedent that the standard of review applicable to all trial errors, including, but not limited to, erroneous jury instructions, is the "harmless beyond a reasonable doubt" standard.[3]

### DISCUSSION

#### 1.

#### ADMISSIBILITY OF EVIDENCE OF THE $242 FOUND ON CHUN

▮ Chun contends that the court erred when it reconsidered its original order denying admissibility of the evidence of the $242 found on Chun. We disagree. Such reconsideration was within the ambit of the court's allowable discretion.

---

2. Hawai'i Rules of Penal Procedure Rule 52(a) (1999) states, "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." We assume that the Hawai'i Supreme Court's application of the "harmless beyond a reasonable doubt" standard to all trial errors is based on the defendant's substantial right to a fair trial.

3. Some trial errors may be plain errors. For example,
> [b]ecause the ultimate responsibility properly to instruct the jury lies with the circuit court and not with trial counsel, and because it may be plain error for a trial court to fail to give a proper included offense instruction, it is like-

wise self-evident that it may be plain error for a trial court to give an instruction regarding a nonexistent "included offense," even when the defendant has requested it by agreement with the prosecution. Indeed, the giving of such an erroneous instruction constitutes plain error as a matter of law when "there is a reasonable possibility that [the instruction] might have contributed to conviction," because the error "seriously affect[s] the fairness, integrity, or public reputation of [the] judicial proceedings."

*State v. Loa*, 83 Hawai'i 335, 358, 926 P.2d 1258, 1281 (1996) (citations omitted).

Chun further contends that the evidence of the $242 found on Chun was irrelevant and prejudicial. In the circuit court, Chun argued that the money could raise the unfair and prejudicial inference that Chun was gambling, even though she was not charged with gambling, and cause the jury to look unfavorably upon Chun. On appeal, Chun further argues that "[e]specially since the ruling changed overnight for no good reason, [Chun] suffered the type of substantial prejudice to her rights which call for reversal of the judgment."

In the circuit court, the State's position was that the money was relevant in establishing a nexus in its constructive possession case against Chun. According to the Answering Brief, the State "argued that the money found in [Chun's] pocket was relevant to show she 'had drugs on—in her purse, had drugs next to her on the couch that she was selling and, therefore, the money would be relevant to link up the State's theory that [Chun] was selling drugs."

In this appeal, however, the State acknowledges that the "court admitted the money because it was found during the execution of a *gambling* search warrant." (Emphasis in original.) The State also "agrees with [Chun] that the money recovered from her pocket was not relevant to prove she constructively possessed State's Exhibit [No.] 5." *See State v. Feliciano*, 2 Haw.App. 633, 635–37, 638 P.2d 866, 869–70 (1982) (where, during trial, the State argued that certain hearsay was admissible through the state of mind exception, but admitting on appeal that the state of mind of the declarant was not a relevant issue, and the court noted that even if evidence was erroneously admitted, it was harmless beyond a reasonable doubt).

Chun's case is similar to *State v. Toro*, 77 Hawai'i 340, 884 P.2d 403 (App.), *cert. denied*, 77 Hawai'i 489, 889 P.2d 66 (1994), in that *Toro* also presents the issue of the admission of irrelevant evidence. However, where *Toro* involved extensive questioning regarding the irrelevant evidence, the evidence in Chun's case regarding the $242 found on Chun's person was only mentioned once by Officer Matthews in passing. Furthermore, neither the DPA nor the co-defendant's counsel mentioned the $242 in their closing arguments. Only Chun's counsel brought up the $242 during closing arguments.

The State's position is that the evidence of Chun's possession of the $242 was harmless beyond a reasonable doubt, because there is no reasonable possibility its admission contributed to Chun's conviction. In the State's words, "The admission of the money was of no consequence to the determination of whether [Chun] had constructive possession of the packet of crystal methamphetamine, and thus, its admission was harmless beyond a reasonable doubt."

We conclude that the erroneous admission of the evidence of the $242 was harmless beyond a reasonable doubt. The State produced voluminous evidence concerning the position of the drugs and where they were found in relation to Chun. Additionally, the evidence showed that Apartment No. 203 was a gambling house where the police recovered video gambling machines, components for the machines, currency from the machines, and some written gambling records. The gambling machines were turned on, and money was in the machines when the search team entered the apartment. There was evidence that "[t]o play the machine a player sticks whatever type [of] bill, twenties, tens into a vault to automatically credit points onto the [machine's] screen." Under such circumstances, Chun's presence in Apartment No. 203 with $242 on her person was no more prejudicial than her presence there without $242 on her person.

### 2.

### MOTION FOR JUDGMENT OF ACQUITTAL

Chun contends, as separate points on appeal, that (1) there was insufficient evidence to support the verdict finding her guilty of Count II and (2) the trial court erred in denying her motions for judgment of acquittal and/or new trial with respect to Count II.

We note that it is redundant for Chun to present both of these points on appeal because "[a] motion for judgment of acquit-

**396**

tal, therefore, 'tests the sufficiency of the evidence' with regards to each element of the charged offense." *State v. Pudiquet*, 82 Hawai'i 419, 423, 922 P.2d 1032, 1036 (App.), *cert. denied*, 83 Hawai'i 360, 922 P.2d 973 (1996) (quoting *State v. Alston*, 75 Haw. 517, 527, 865 P.2d 157, 163 (1994)). Therefore, we will only discuss Chun's point regarding the trial court's alleged error in denying her motion for judgment for acquittal and/or new trial.

▮▮▮ Chun contends that the trial court erred in denying her Hawai'i Rules of Penal Procedure (HRPP) Rule 29(a) (1998) motion for judgment of acquittal made at the close of the State's evidence. Chun also contends that the trial court erred in denying her HRPP Rule 29(c) motion for judgment of acquittal made on April 27, 1998, after the jury had found her guilty. This motion was heard on June 29, 1998, and denied by order filed on July 16, 1998.[4] We note that since no evidence was presented after the State rested, both motions for judgment of acquittal raised the same issue with respect to the same evidence.

> To deny a motion to acquit there must be sufficient evidence to support a prima facie case. The evidence must enable a reasonable mind fairly to conclude guilt beyond a reasonable doubt, giving full play to the right of the factfinder to determine credibility, weigh the evidence, and draw justifiable inferences of fact.

*State v. Smith*, 59 Haw. 456, 460, 583 P.2d 337, 341 (1978).

> The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the jury, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.

*Alston*, 75 Haw. at 528, 865 P.2d at 164 (1994).

▮▮▮ An appellate court, in reviewing the denial of a motion for judgment of acquittal, will not disturb the lower court's ruling if the evidence of the prosecution is such that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *State v. Kahalewai*, 55 Haw. 127, 128, 516 P.2d 336, 337 (1973). In Chun's case, we conclude that a reasonable mind might fairly conclude her guilt beyond a reasonable doubt. This conclusion is based on the following analysis of evidence.

As stated previously, the test on appeal when reviewing the sufficiency of the evidence is whether, when viewed in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact. *State v. Silva*, 75 Haw. 419, 432, 864 P.2d 583, 589 (1993). In *State v. Mundell*, 8 Haw.App. 610, 622, 822 P.2d 23, 29, *cert. denied*, 72 Haw. 619, 841 P.2d 1075 (1991) (quoting *State v. Fox*, 709 P.2d 316, 319 (Utah 1985)), this court stated that "to support a finding of constructive possession, the evidence must show 'a sufficient nexus between the accused and the drug to permit an inference that the accused had both the power and intent to exercise dominion and control over the drug.'" State's Exhibit No. 5, the packet of crystal methamphetamine, which is the basis for Count II, was found on the couch upon removal of "maybe the pillow or another item or two" right beside where Chun was seated. Chun and Lile were the only ones in the room at the time. Such evidence is substantial evidence allowing the jury to decide that the State showed a sufficient nexus between Chun and the drugs.

▮▮▮ Chun alleges that there was a conflict between the testimony of Officer Nobriga and Officer Matthews as to where State's Exhibit No. 5 was found and that based on this conflict, there was insufficient evidence to support the verdict.[5] We dis-

---

**4.** When a defendant fails to file a motion for judgment of acquittal within the prescribed time limits or fails to renew a motion for judgment of acquittal, this will not necessarily preclude an appellate court from reviewing the sufficiency of the evidence of the case. The appellate court does so by a review of the case for plain error. *State v. Chen*, 77 Hawai'i 329, 333, 884 P.2d 392,

396 (App.), *cert. denied*, 77 Hawai'i 489, 889 P.2d 66 (1994).

**5.** Officer Paul Nobriga testified in relevant part as follows:

> Q. . . . [D]id you also testify that there was a packet on the sofa?

agree that the alleged conflict resulted in insufficient evidence. Officer Matthews was the officer who actually recovered the packet and testified concerning where he found the packet. Officer Nobriga could only testify to his information as to where the packet was found since he did not actually find the packet himself. It is the jury's province to determine the credibility of witnesses, weigh the evidence and draw justifiable inferences of fact from that evidence. *State v. Elmaleh*, 7 Haw.App. 488, 494, 782 P.2d 886, 890, *cert. denied*, 70 Haw. 666, 796 P.2d 502 (1989). Therefore, the jury was authorized to resolve the conflict in favor of the State rather than Chun.

### 3.

### MOTION FOR NEW TRIAL

Chun also contends that the trial court erred in denying her April 27, 1998 motion for new trial as to Count II. In *State v. Furutani*, 76 Hawai'i 172, 178–79, 873 P.2d 51, 57–58 (1994), the Hawai'i Supreme Court stated, "[T]he granting or denial of a motion for new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion." The basis for Chun's April 27, 1998 motion for new trial was that "[t]he verdict was clearly inconsistent with the evidence and the interests of justice require granting [Chun] a new trial." As previously mentioned in our discussion regarding Chun's April 27, 1998 motion for judgment of acquittal, after a thorough examination of the record in this case,

we decide that the trial court did not abuse its discretion.

### 4.

### MOTION FOR CONDITIONAL DISCHARGE

■ Chun contends that the court erred when it denied her post-verdict, pre-sentence June 25, 1998 motion for conditional discharge.

HRS § 712–1255 states as follows:

**Conditional discharge.** (1) Whenever any person who has not previously been convicted of any offense under this chapter or chapter 329 or under any statute of the United States or of any state relating to a dangerous drug, harmful drug, detrimental drug, or an intoxicating compound, pleads guilty to or is found guilty of promoting a dangerous drug, harmful drug, detrimental drug, or an intoxicating compound under section 712–1243, 712–1245, 712–1246, 712–1248, 712–1249, or 712–1250, the court, without entering a judgment of guilt and with the consent of the accused, may defer further proceedings and place the accused on probation upon terms and conditions. Upon violation of a term or condition, the court may enter an adjudication of guilt and proceed as otherwise provided.

. . . .

(5) After conviction, for any offense under this chapter or chapter 329, but prior to sentencing, the court shall be advised by the prosecutor whether the conviction is

---

A. There was one found, yes.
Q. Did you personally observe it in the position where the officer found it?
A. It was pointed out to me when it was photoed [sic]. I wasn't there when they actually found it.
Q. You weren't the one who found it then?
A. No.
Q. Looking at the photo, are you able to tell me where it was, or your understanding of where it was?
A. Yes, it was the area of this child seat with this bag on top, I believe underneath the bag onto the child seat.
Q. There's a magenta colored bag in the pictures.
A. Yes, it was under that, I believe under the bag on top of the child's seat.

Officer Bruce Matthews was the officer who actually recovered the packet and testified in relevant part as follows:
Q. Did you show Officer Nobriga where you found it [the packet of crystal methamphetamine]?
A. I told him it was on the makai side [ocean side] of the couch on top of the seat cushion.
Q. Okay. So if he says that it was shown to him that the packet was found between the magenta bag and the kiddie seat, would you agree with that?
A. No, that's not where I found it, though. I found it on the seat cushion.

defendant's first or a subsequent offense. . . .

Years after HRS § 712–1255 became law, HRS § 712–1243(3) was enacted and provides, in relevant part, as follows:

Notwithstanding any law to the contrary, if the commission of the offense of promoting a dangerous drug in the third degree under this section involved the possession or distribution of methamphetamine, the person convicted shall be sentenced to an indeterminate term of imprisonment of five years with a mandatory minimum term of imprisonment, the length of which shall be not less than thirty days and not greater than two-and-a-half years, at the discretion of the sentencing court. The person convicted shall not be eligible for parole during the mandatory period of imprisonment.

The court denied Chun's June 15, 1998 motion for conditional discharge based on its belief that, under HRS § 712–1243, the court was not authorized to grant such a motion.

Chun contends that HRS § 712–1243(3) does not apply in her case because it applies only upon a prior conviction involving the combination of a finding of guilt *and* the imposition of a sentence. In the words of Chun's counsel, "We got a guilty verdict, no sentence yet, so there's no conviction yet. So the mandatory prison language doesn't apply, and this is an appropriate time for the court to step in and consider a conditional discharge."

As noted in *State v. Akana*, 68 Haw. 164, 166, 706 P.2d 1300, 1303 (1985), "The meaning of the term 'convicted' or 'conviction' varies according to the context in which it appears and the purpose to which it relates." In some contexts, it means the combination of the finding of guilt and the sentence. In other contexts, it means only the finding of guilt. For example, as noted above, HRS § 712–1255(5) separates "sentence" from "conviction" when it states that "[a]fter conviction, . . ., but prior to sentencing[.]" Similarly, HRS § 712–1243(3) specifies that "the

person convicted shall be sentenced to an indeterminate term of imprisonment of five years with a mandatory minimum term of imprisonment[.]"

■ HRS § 712–1243(3) specifies that "the person convicted shall be sentenced to an indeterminate term of imprisonment of five years with a mandatory minimum term of imprisonment[.]" In this context, does the word "convicted" mean "found guilty" or "found guilty and sentenced?" We conclude that it is obvious in this situation that the word "convicted" means "found guilty." If it meant "found guilty and sentenced," HRS § 712–1243(3) would be saying that "the person [found guilty and sentenced] shall be sentenced[.]" Such an interpretation would violate the rule of statutory construction that a " 'rational, sensible and practicable interpretation [of a statute] is preferred to one which is unreasonable or impracticable,' because '[t]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality.' "

*Keliipuleole v. Wilson*, 85 Hawai'i 217, 221–22, 941 P.2d 300, 304–05 (1997) (citations omitted).

Our interpretation is also supported by the facts that HRS § 712–1243(3) is a subsection of HRS § 712–1243 and cannot reasonably be construed to add the following words outlined in bold to its text: "Notwithstanding any law to the contrary, if the commission of the offense of promoting a dangerous drug in the third degree under this section involved the possession or distribution of methamphetamine, the person **who previously has been** convicted (**i.e., found guilty and sentenced**) shall be sentenced to an indeterminate term of imprisonment of five years[.]"

Finally, our interpretation is supported by the use in HRS § 712–1255 of the word "convicted" and the words "judgment of guilt." The language of HRS § 712–1255 shows that, as used in HRS § 712–1255, the word "convicted" means "found guilty," and the words "judgment of guilt" mean "found guilty and sentenced."[6]

---

**6.** Hawai'i Revised Statutes § 641–11 (1993) states in relevant part that "[t]he sentence of the court in a criminal case shall be the judgment."

## CONCLUSION

Accordingly, we affirm the circuit court's June 29, 1998 Judgment.