**STATE OF HAWAII**, Plaintiff–Appellee, v. **ARMANDO Q. QUELNAN**, also known as Andy Quelnan, Defendant–Appellant, and **NESTOR B. CONSTANTINO**, Defendant

NO. 13040

(CR. NO. 86–0784)

JANUARY 11, 1989

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY HAYASHI, J.

Defendant–Appellant Armando Q. Quelnan (Defendant) appeals from the Order of Revocation of Probation and Resentencing entered in the First Circuit Court on May 6, 1988. The circuit court's order revoked Defendant's probation and resentenced Defendant to a concurrent ten–year term of imprisonment on each count, with mittimus issued forthwith.[1] We reverse.

I.

## FACTUAL BACKGROUND

On July 10, 1986, Defendant was indicted on three counts of Promoting a Dangerous Drug in the Second Degree (HRS § 712–1242(1)(c)).[2] On November 28, 1986, Defendant pled guilty to all three counts.

On January 7, 1987, Defendant was sentenced to five years probation on each count. Five general probation conditions were listed, including the reporting of "any change of address or change of employment within 48 hours." Record at 118.

Seven special probation conditions were also listed, including:

    1)      imprisonment for a period of three months;

---

[1] An Order Denying [Defendant's] Motion for Release on Bail Pending Appeal was subsequently entered on June 28, 1988.

[2] The indictment stated that the events in question took place on or about January 9, 1986, January 16, 1986, and February 17, 1986, respectively.

■■■■■■■■

2) upon his release, Defendant refrain "from the use of illicit/unprescribed drugs/substances[]";

3) submitting to drug and alcohol testing as directed by the Adult Probation Division (APD), "with the provision that a positive finding . . . may be considered prima facie evidence of probation violation[]"; and

4) obtaining and maintaining "gainful employment and/or be enrolled in an educational/vocational training program" throughout the probationary period.

*Id.* at 119.

On March 2, 1988, the State of Hawaii (State) filed a Motion for Revocation of Probation and Resentencing. Based on the affidavit of Defendant's probation officer, Michelle Wentzell (Officer Wentzell), State averred that Defendant had violated the following conditions of probation:

1) on September 4, 1987, Defendant was indicted in Criminal No. 87–1079 with various gambling offenses;[3]

2) on January 26, 1988, "[D]efendant provided a urine specimen that was positive for amphetamines[]";

3) on February 11, 1988, "[D]efendant provided a urine specimen that was positive for amphet[a]mines[]"; and

4) "[a]n attempt to verify the [D]efendant's employment with Sida Taxi resulted in a report that the

_____

[3] At the subsequent May 6, 1988 hearing on State's motion to revoke probation, the circuit court took judicial notice of the following facts: 1) the circuit court files in Criminal No. 87–1079, which contained the gambling indictment; 2) that the events described in the gambling indictment occurred one week prior to the events described in the drug indictment of the instant case; and 3) that the gambling indictment was dismissed.

State concedes that the gambling indictment is not an appropriate basis for revocation since the events in that indictment took place before Defendant's conviction here and because the indictment has been dismissed and is the subject of a pending appeal (Appeal No. 13132).

Nevertheless, State contends that either of the remaining grounds urged for revocation is sufficient to support the circuit court's decision.

[D]efendant pays a taxi rental fee but does not drive
for Sida and therefore has misrepresented his em-
ployment and source of income" to Officer Wentzell.

Record at 163–64.

On April 4, 1988, defense counsel requested that the Office of the Prosecuting Attorney (prosecutor's office) provide Defendant with the urine samples taken from him on January 26, 1988 and February 11, 1988, for the purpose of conducting independent testing of the specimens. By letter dated April 11, 1988, the prosecutor's office responded:

The probation officer did not save the speicmens [sic] taken from your client on January 26, [1988] and February 11, 1988.

Record at 177.

On May 4, 1988, Defendant filed a Motion for Exclusion of Urinalysis Results. On May 6, 1988, a consolidated hearing was held before the First Circuit Court (Judge Ronald B. Greig) on Defendant's motion to exclude and on State's motion to revoke probation. After the circuit court orally denied Defendant's motion to exclude,[4] State's motion to revoke probation was then heard.

State presented its case through the testimony of Officer Wentzell.[5] Defendant then testified. Thereafter, the circuit court found that Defendant had "inexcusably violated the terms and conditions of probation," leaving the circuit court with "no alternative but to grant the motion to revoke probation." Transcript of May 6, 1988 at 36. The circuit court then resentenced Defendant to a concurrent ten–year term of imprisonment on each count, with mittimus issued forthwith.

Following Defendant's timely notice of appeal, the facts in this case took a disturbing twist. On September 16, 1988, in an attempt to determine the procedures under which Defendant's specimens were discarded, State first learned that on April 11, 1988, the specimens in question, al-

---

[4] The written Order Denying [Defendant's] Motion for Exclusion of Urinalysis Results was subsequently entered on May 19, 1988.

[5] During direct examination, Officer Wentzell testified that, *inter alia*, Defendant tested positive for amphetamines on January 26, 1988 and February 11, 1988. Subsequently, on cross–examination, Officer Wentzell testified that the January sample tested positive for amphetamines and methamphetamines.

though no longer in the possession of the APD, were in the possession of an independent testing laboratory, which, under contract with the APD, retains such specimens for six months after a positive test result.[6]

## II.

## PROBATION REVOCATION

HRS § 706–625(c) (Supp. 1988) provides in pertinent part (emphasis added): "The court shall revoke probation if the defendant has *inexcusably failed to comply with a substantial requirement imposed as a condition of the order* or has been convicted of a felony." HRS § 706–625(e) (Supp. 1988) states, in turn: "When the court revokes probation, it may impose on the defendant any sentence that might have been imposed originally for the crime of which he was convicted."

While no specific findings were made, upon a careful review of the record, it is clear the circuit court based its decision to revoke Defendant's probation on two grounds: 1) the positive urinalysis test results; and 2) Defendant's misrepresentation of his employment status to Officer Wentzell. *Contra* note 3, *supra.*

## A.

## DRUG VIOLATION

"The duty of the prosecution is to seek justice, to exercise the highest good faith in the interest of the public and to avoid even the appearance of unfair advantage over the accused." *State v. Miller*, 67 Haw. 121, 122, 680 P.2d 251, 253 (1984); *see also ABA Standards for Criminal Justice* § 3–1.1 (2d ed. Supp. 1982).

Whether through inadvertence, neglect or otherwise, we find unjust and unfair, State's:

---

[6] At oral argument, State conceded that: 1) Defendant's urine samples were in existence when defense counsel requested production of the specimens; and 2) the April 11, 1988 letter was misleading.

1)  failure in producing Defendant's urine specimens upon defense counsel's timely request;

2)  misrepresentation to defense counsel that Defendant's urine specimens were not saved;

3)  subsequent use of the positive test results as one of the bases in seeking revocation, despite its failure in producing the specimens for independent testing upon defense counsel's timely request; and

4)  five month delay, from April 4, 1988, the date defense counsel requested production of the specimens, to September 16, 1988, in attempting to determine the true nature and location of the specimens in question.

Accordingly, we hold that upon defense counsel's timely request for production, State should have produced the urine specimens to defense counsel in order to give Defendant the opportunity to conduct independent testing.

Defense counsel's production request made prior to the probation revocation hearing, we believe, was essentially similar to an accused's pre-trial discovery request for relevant material or information within the prosecution's possession or control.[7] *See* Hawaii Rules of Penal Procedure (HRPP) Rule 16(b)(1)(iv); *cf. State v. Kutzen*, 67 Haw. 542, 696 P.2d 351 (1985) (State's unintentional false representation to defense counsel at pre-trial discovery conference that it had no videotapes of defendant which it had yet to produce violated HRPP Rule 16(b)(1)(ii)). Hence, State's failure to timely produce the requested material violated the inherent principles of justice and fundamental fairness accorded to an accused.

State's submission of Defendant's positive urinalysis results into evidence solely through Officer Wentzell's testimony causes us additional concern. *Cf. United States v. Bell*, 785 F.2d 640 (8th Cir. 1986) (good cause shown for allowing the government to present urinalysis laboratory reports and police reports at probation revocation hearing without producing the persons who prepared the reports, but good cause

---

[7] Although apparently verbal in nature, State does not dispute the fact that a request for production of Defendant's urine samples was made.

not shown for admitting a supervising probation officer's hearsay testimony about a police investigation on probationer's alleged cocaine trafficking); *United States v. Penn*, 721 F.2d 762 (11th Cir. 1983) (admittance of probation officer's testimony on the positive urinalysis results, the laboratory reports, and a letter from the laboratory summarizing the results, deemed sufficiently trustworthy and reliable); *United States v. Caldera*, 631 F.2d 1227 (5th Cir. 1980) (per curiam) (introduction of laboratory reports containing positive cocaine finding at probation revocation hearing through the testimony of a police officer who participated in neither the chemical analysis nor the report's preparation held insufficient); *State v. Marrapese*, 122 R.I. 494, 409 A.2d 544 (1979) (construing *State v. De Roche*, 120 R.I. 523, 389 A.2d 1229 (1978)) (if the declarant is unavailable for cross–examination, the trial court must make a specific finding of just cause for not permitting confrontation prior to the admission of the hearsay testimony during the probation revocation hearing). Here, Defendant's liberty interest was at serious risk, *see Gagnon v. Scarpelli*, 411 U.S. 778 (1973), based primarily on the positive drug findings submitted into evidence via Officer Wentzell's testimony.

Obviously, Defendant's ability to challenge the validity of the testing methods and procedures utilized, and in turn, the accuracy and reliability of the positive drug findings, was severely limited to defense counsel's cross–examination of Officer Wentzell.[8] This restriction unduly prejudiced Defendant's right to present a potentially meritorious defense. *See* HRS § 706–625(b) (probationer's right to appear at the probation revocation hearing and to controvert and be heard upon the evidence). Defendant's inability to independently test the specimens prior to the probation revocation hearing added to this prejudice.

Based on the foregoing reasoning, we hold that the positive drug findings resulting from the January 26, 1988 and February 11, 1988 samples was an inappropriate basis in determining Defendant's future probationary status. Accordingly, suppression of the positive drug findings is the appropriate sanction herein.

---

[8] For example, during cross–examination, when asked to give a clinical description of amphetamines, Officer Wentzell responded: "Then I think you should bring in an expert witness." Transcript of May 6, 1988 at 18.

B.

## CHANGE IN EMPLOYMENT STATUS VIOLATION

Officer Wentzell testified that Defendant misrepresented his employment status and source of income, thereby violating the general condition which states in part that Defendant report any change of employment within 48 hours. Although Defendant had reported to her that he was employed at Sida Taxi (Sida), her check with Sida in January 1988 showed that Defendant had not been employed there for a number of months.

According to Officer Wentzell, Defendant's arrangement with Sida was that he paid a rental fee in return for trips and assignments. Questioning Defendant on the matter, he acknowledged to her that his taxi driver's license had expired in October 1987, that he had been denied reissuance of his license, and therefore, was not authorized to drive a taxi. Officer Wentzell further testified that Defendant continued as a taxi driver by sometimes picking up fares independently.

Defendant testified that he was denied reissuance of his taxi driver's license due to his then pending gambling indictment.

In our view, there is serious doubt as to whether Defendant inexcusably failed to comply with the change in employment status condition of probation. *See State v. Nakamura*, 59 Haw. 378, 581 P.2d 759 (1978) (Habilitat's rejection of probationer as a resident was based on unreasonable and arbitrary grounds). Arguably, but for Defendant's failure to gain reissuance of his taxi driver's license, Defendant would still be gainfully employed with Sida as a taxi driver. Based on the record, the sole reason Defendant was denied reissuance was due to his then pending gambling indictment, which was later dismissed.

Moreover, we note that Defendant's employment status during his probationary period did not evidence conduct willfully and deliberately subversive of exemplary probationary behavior. *Id.*; *State v. Huggett*, 55 Haw. 632, 525 P.2d 1119 (1974). The record indicates that after losing his taxi driver's license, Defendant worked as an independent driver, then as a laborer with a roofing company, and at the time of the hearing, as a manager at a local lounge.

Additionally, Defendant did not leave the sentencing court's jurisdiction during his probationary period and the record reflects that Officer

Wentzell was able to contact and locate Defendant on a regular basis. *See State v. Huggett*, 55 Haw. 632, 525 P.2d 1119 (1974). In essence, Defendant's overall whereabouts was readily ascertainable and known to the probation department.

Based on the foregoing reasoning, we conclude that Defendant's failure to report his change in employment status within 48 hours was excusable under the circumstances.

## III.

## CONCLUSION

Accordingly, we reverse the Order of Revocation of Probation and Resentencing. Reversed.

Jonathan Ezer (Alvin T. Sasaki on the briefs; Ezer & Sasaki, of counsel) for Defendant–Appellant.

Jeffrey M. Albert, Deputy Prosecuting Attorney, for Plaintiff–Appellee.