**Nathan A. JONES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 48A02–9705–CR–264.**

Court of Appeals of Indiana.

Dec. 30, 1997.

---

1.   Dismissal was appropriate pursuant to Ind.Trial Rule 41(E).  *Id.* at 231.

Jeffrey A. Modisett, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellee-Plaintiff.

## OPINION

FRIEDLANDER, Judge.

Nathan A. Jones was convicted of Battery by Means of a Deadly Weapon,[1] a class C felony. The trial court imposed a sentence of eight years, with six years executed and two years suspended. The court also ordered that Jones be placed on probation for a period of two years upon his release from incarceration. One of the conditions of probation was that, within sixty days of his release, Jones must secure and maintain full-time employment for a minimum of thirty-five hours per week and provide the probation department with written verification of compliance with this condition. After finding that Jones had violated the terms of his probation by failing to maintain full-time employment, failing to notify the probation department of such employment, and committing battery on two separate occasions, the court ordered Jones to serve the remainder of his sentence. He now appeals, raising the following restated issues:

1. Was sufficient evidence presented to justify the revocation of Jones's probation?

2. Did the trial court err in denying Jones credit for time served on inhome detention as part of the Community Justice Center Day Reporting Program he was ordered to complete while on probation?

We affirm.

### 1.

Sufficient evidence was presented to justify the revocation of Jones's probation.

■ A probation hearing is civil in nature, and the State must therefore prove the alleged violation of probation by a preponderance of the evidence. *Braxton v. State,* 651 N.E.2d 268 (Ind.1995). When reviewing a claim of insufficient evidence to support a trial court's decision to revoke probation, we will not reweigh the evidence nor judge the

Douglas R. Long, Anderson, for Appellant-Defendant.

1. Ind.Code Ann. § 35–42–2–1(a)(3) (West Supp. 1997).

credibility of witnesses. *Id.* Rather, we will consider all the evidence most favorable to the judgment of the trial court and will affirm the decision to revoke probation if there is substantial evidence of probative value to support the trial court's conclusion that a probationer has violated any condition of probation. *Id.* This court recently determined that hearsay evidence is admissible at probation revocation hearings. *Sutton v. State,* 689 N.E.2d 452 (Ind.Ct.App.1997).

■ Even where the State alleges the violation of more than one condition of probation, proof of only one probation violation is sufficient to revoke a defendant's probation. *Menifee v. State,* 600 N.E.2d 967 (Ind.Ct. App.1992). Where a person has violated a condition of probation at any time before the termination of the probationary period, the trial court may order execution of the sentence that was suspended at the time of the initial sentencing. Ind.Code Ann. § 35–38–2–3(g)(3) (West Supp.1997).

■ At the probation violation hearing on February 24, 1997, the State presented the testimony of Jones's probation officer that Jones had failed to notify the probation department of his employment status since May 16, 1996, at which time he was not employed. In addition, Jones admitted that he had been employed for a total of only four months since his release from prison in June 1995 and that he had not informed his probation officer of his employment status. The State also presented evidence, albeit most of it hearsay, that Jones had committed battery against his girlfriend, Fleuradecia Brooks, on two separate occasions.

Brooks testified that the police were contacted in June 1996 regarding a battery involving Jones. At trial, Brooks described the altercation between herself and Jones and admitted that Jones hit her in the eye. However, she characterized such contact as accidental. When the State asked Brooks about her statements to police on the date of the incident, Jones interposed a continuing hearsay objection. Brooks admitted that she "probably did", *Record* at 118, tell a police officer at the scene that, before she could say anything to Jones, Jones slapped her and knocked her off her moped. She denied having ever told the police that, after she fell to the ground, Jones struck her in the face several times with his fist.

Brooks admitted that the police had been called again as a result of an argument between herself and Jones on October 24, 1996. Brooks described the altercation as "rumbling around", *Record* at 120, and admitted that the two were pushing each other and that Jones tore her shirt when he grabbed her. She also testified that she fell and hit her head, but claimed that the injury was a result of tripping over a step and not from Jones pushing her. Brooks denied having told a police officer that Jones grabbed her by the neck, choked her, and then pulled her by her shirt onto the front porch, but she admitted that she may have told a police officer that Jones had pulled her hair. She also admitted that Jones "might have pushed [her] onto the ground," *Record* at 122.

Byron Trent Chamberlain, an Anderson police officer, testified that he was called to the scene on October 24, 1996 in response to a call about two people fighting. He testified that, when he arrived on the scene, Brooks had injuries on her neck, face, and head, and her arm was scraped, red, and swollen. Over a hearsay objection, Chamberlain testified that Brooks told him that Jones attacked her while the two were inside the house and that Jones grabbed her by the neck, choked her, threw her to the ground, and kicked her at least twice in the face.

At the conclusion of the hearing, the trial court determined that Jones had violated the terms of his probation by failing to maintain employment and by failing to notify the Probation Department of his employment status. The court also determined that Jones had violated the terms of his probation by committing battery upon Brooks. The court stated in pertinent part:

> I think the final story has not been written as to whether or not the appellate courts of this state are going to permit hearsay in probation proceedings. We don't know exactly what to do about that, but as I think about this, clearly even apart from hearsay, there is evidence from the testimony

of Ms. Brooks and Mr. Jones that makes it clear that these little conflicts that they both try to minimize, those little conflicts, escalated into some offensive touching. I think it very reasonable to conclude of a criminal nature, that there was some criminal intent. The Court is not obliged to accept the spin on the testimony that the parties give, but can use some common sense. We have two different dates here, and based upon the testimony of the witnesses, their demeanor, what was and what was not said, the Court concludes that there was at the very least simple batteries committed by Mr. Jones on June the 21st of 1996 and on October the 24th of 1996.

*Record* at 145.

A majority of this panel declines to follow *Sutton, supra,* which the author of this opinion believes states the law. Even so, Chamberlain's testimony may still have been admissible under the excited utterance exception to the hearsay rule.

Even apart from the hearsay testimony, Brooks admitted that Jones pushed her onto the ground. In addition, there was nonhearsay testimony that established, at a minimum, that there were two altercations between Jones and Brooks which involved pushing and hitting. It was up to the trial court to judge the demeanor and credibility of the witnesses, and the trial court was within its discretion to discount the "spin" put on the events by Jones and Brooks and to determine that some offensive touching had occurred.

The evidence presented at the hearing was sufficient to justify the revocation of Jones's probation. While proof of only one probation violation is necessary to revoke a defendant's probation, the State presented sufficient evidence that Jones had violated the terms of his probation with regard to all three bases alleged.

### 2.

■ The trial court did not err in denying Jones credit for time served on in-home de-tention as part of the Community Justice Center Day Reporting Program he was ordered to complete while on probation. A person does not earn credit time while on probation. Ind.Code Ann. § 35–50–6–6(a) (West 1986); *Collins v. State,* 639 N.E.2d 653 (Ind.Ct.App.1994), *trans. denied.*

Judgment affirmed.

KIRSCH, J., concurs in result with separate opinion.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

KIRSCH, Judge, concurring in result.

I agree with and join in that part of Judge Sullivan's separate opinion that the common law hearsay rule was not abrogated in probation proceedings by the adoption of the Indiana Rules of Evidence. I believe, however, that the nonhearsay evidence was sufficient to support the trial court's revocation of probation. Accordingly, I concur in the result set out in the opinion of Judge Friedlander.

SULLIVAN, Judge, concurring in part and dissenting in part.

The trial court revoked Jones' probation upon three discrete grounds: that he failed to maintain full time employment; that he failed to notify the Probation Department of employment; and that he committed batteries on two different occasions. In my view, only one of these bases is an arguably appropriate ground for revocation.

The evidence, without regard to the hearsay testified to by Officer Chamberlain, is minimally adequate to indicate that a simple battery took place on October 24, 1996. Brooks admitted that she and Jones "were rumbling around", that they were pushing each other and that her shirt was torn when Jones grabbed her. Record at 120. From such evidence the probation revocation court might have reasonably concluded that on that date Jones committed battery as a Class B misdemeanor.[2] There is no substantive evi-

---

**2.** To the extent that Officer Chamberlain testified that he observed "injuries" upon Brooks' person and some "redness around the wrist" (Record at

127), that observation was made without any suggestion or implication which might bear upon causation or time of infliction, other than hear-

dence, however, that a battery took place on June 21, 1996.[3]

■ The majority relies upon the fact that in *Greer v. State* (1997) Ind., 685 N.E.2d 700, our Supreme Court, upon transfer, vacated the earlier opinion by this court in *Greer v. State* (1996) Ind.App. 669 N.E.2d 751. The Supreme Court did in fact do so, but it held only that the Court of Appeals lacked subject matter jurisdiction over the belated appeal with respect to revocation of probation. In no respect did it criticize or comment upon the Court of Appeals' reasoning that, notwithstanding Ind. Evidence Rule 101(c)(2), the specific evidentiary common law rule barring hearsay in probation revocation proceedings remains viable and in place in Indiana law. *Payne v. State* (1987) Ind.App., 515 N.E.2d 1141. In my view, although the holding of this court in *Greer* has been vacated, the rationale utilized with respect to hearsay *vis a vis* Rule 101 remains more persuasive than does the naked conclusion reached in *Sutton v. State,* Ind.App., 689 N.E.2d 452. In *Sutton,* the court concluded that hearsay is admissible in probation revocation proceedings solely because Ind. R. Evid. 101 states that the rules do not apply to "proceedings relating to ... probation". The *Sutton* court did not consider whether there was a common law determination with regard to this specific evidentiary issue so as to "trump" the non-applicability language in Ind. R. Evid. 101(c)(2).[4] I would, therefore, decline to follow *Sutton, supra.*

As to the matter of employment, Jones endeavored to, and did in fact, obtain em-ployment as required by the terms of his probation. His first place of employment was closed down, and the job was terminated though no fault of Jones. He sought employment but was unsuccessful until following the fulfillment of a previously ordered ninety-day period of "day reporting" and home detention. The second job ended with his administrative layoff, again, though no fault of Jones. Such scenario does not reflect a conscious disregard for the condition of his probation and should not have constituted a basis for revocation.

The facts do disclose, however, that Jones failed to report his employment status. One might conclude that such failure, standing alone, should not constitute grounds for subjecting the probationer to two years executed time. To be sure, there are valid reasons, administrative and otherwise, why a probationer might be required to keep the Probation Department advised as to his current employment status. However, the sanction of probation revocation seems unduly harsh when it is imposed for mere failure to advise that the individual has, in good faith, complied with the directive of the court to obtain employment.

My research discloses no Indiana case in which failure to report one's employment status was held to constitute a valid basis for probation revocation. The only Indiana case even closely resembling the situation before us involved failure of the probationer to advise the court of his current address. In *Buck v. State* (1991) Ind.App., 580 N.E.2d 730, however, the probationer had not only moved to Florida without permission but had

---

say as to what Brooks said. His testimony as to what Brooks told him was admitted solely for impeachment purposes and could not be considered as establishing the fact of the battery.

3. Exclusive of hearsay, evidence relating to the incident of June 1996 does not permit a conclusion that Jones "knowingly or intentionally touch[ed] [Brooks] in a rude, insolent, or angry manner" I.C. 35–42–2–1 (West's 1997 Supp.) Brooks testified that Jones "accidentally" hit her in the eye. Record at 116. Such act does not reflect a knowing or intentional striking. Other than hearsay, there was no other evidence of a battery on this occasion.

4. One might venture the view that proceedings relating to probation *revocation* are not truly proceedings relating to probation itself. Valid basis may be found to conclude that hearsay is readily amenable to the process which, as a matter of leniency, results in a decision to place a person upon probation or to not do so. When, however, one views the penal consequences of a revocation of probation, the reliability and trustworthiness of the evidence which results in such revocation may be considered more essential. One might draw such implication from the observation made in *Payne v. State, supra,* noting that hearsay is excluded in civil proceedings and no rationale was perceived "for treating a probationer with less deference than a civil litigant." 515 N.E.2d at 1144.

also departed after completing less than one-third of the community service hours ordered as a condition of probation. In *Buck,* therefore, the violation was, to a significant degree, more serious than is present here. Additional research has revealed only one case from another jurisdiction involving failure "to obtain regular employment" as the sole basis for probation revocation. In *People v. Oskroba,* (1953) 305 N.Y. 113, 111 N.E.2d 235, a majority of the New York Court of Appeals upheld the revocation solely upon the alleged employment condition violation. It did so, however, in light of other evidence of a violation of probation, which had not been alleged as a basis for the revocation and which, for that reason, was extraneous to the determination. Florida cases reflect a contrary view. As late as 1993, Florida law held that a probationer could not validly be ordered to maintain full-time employment and that such condition was "sufficiently egregious to constitute fundamental error." *White v. Florida* (1993) Fla.App., 619 So.2d 429, 430. Subsequently, that principle was modified or clarified to reflect the reality that a given probationer might be unable to fulfill the condition purely because of economic conditions. Accordingly, the Florida courts approved a probation condition couched in terms to require either that the person "maintain *or actively seek* gainful employment" (emphasis supplied) or "work diligently at a lawful occupation and support any dependents *to the best of your ability* " (emphasis supplied). *Brown v. Florida* (1996) Fla.App., 666 So.2d 240, 242.

Research discloses no reported decision from any jurisdiction in the United States holding valid a probation revocation solely upon failure to report employment status. Interestingly, only one case seems to have addressed the question. In *Hawaii v. Quelnan* (1989) 70 Haw. 194, 767 P.2d 243, the probationer was alleged to have misrepresented his employment status by originally advising the authorities that he was employed at a particular company as a taxi driver but failing to advise that reissuance of his taxi

driver's license had been denied. The Supreme Court of Hawaii reversed the probation revocation stating:

"In our view, there is serious doubt as to whether Defendant inexcusably failed to comply with the change in employment status condition of probation (citation omitted). Arguably, but for Defendant's failure to gain reissuance of his taxi driver's license, Defendant would still be gainfully employed with Sida as a taxi driver. Based on the record, the sole reason Defendant was denied reissuance was due to his then pending gambling indictment, which was later dismissed.

Moreover, ... [the] record indicates that[,] after losing his taxi driver's license, Defendant worked as an independent driver, then as a laborer with a roofing company, and[,] at the time of the hearing, as a manager at a local lounge." *Id.,* 767 P.2d at 247.

It appears, therefore, that establishment of a technical violation of a valid condition of probation will not necessarily permit a revocation of probation. In my estimation, such is the case before us.

Under the circumstances, I would remand to the probation revocation court with instructions to reconsider the matter and to disregard the employment related allegations of probation violation, and consider only whether the battery which may have taken place in October, 1996 was of sufficient gravity to call for execution of the entire remaining two years of the sentence.[5]

---

5.  I concur in the decision of the majority to the effect that Jones is not entitled to credit for the ninety days served in 1996 on home detention. I do so, however, not on the basis of I.C. 35–50–6–

6(a) or *Collins v. State* (1994) Ind.App., 639 N.E.2d 653, but rather upon I.C. 35–38–2.6–6. *See Franklin v. State,* Ind., 685 N.E.2d 1062 (1997).