**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000095**
**19-NOV-2021**
**10:15 AM**
**Dkt. 143 SO**

NO. CAAP-17-0000095

IN THE INTERMEDIATE COURT OF APPEALS
OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellant,
v.
JOSHUA KALILI, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(FC-CR NO. 15-1-0027)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Wadsworth and Nakasone, JJ.)

Plaintiff-Appellant State of Hawaiʻi (**State**), appeals from the January 25, 2017 Findings of Fact, Conclusions of Law and Order Granting Defendant-Appellee Joshua Kalili's (**Kalili**) Motion for New Trial filed on September 8, 2016, by the Circuit Court of the First Circuit (**Circuit Court**).[1] Kalili was charged via Indictment with Murder in the Second Degree in violation of Hawaii Revised Statutes (**HRS**) §§ 707-701.5 and 706-656 (**Count 1**), and with two counts of Abuse of Family or Household Members in violation of HRS § 709-906(1) and (5) in Counts 2 and 3;[2] all counts involved child decedent SRB. Following a jury trial on

---

[1] The Honorable Glenn J. Kim presided.

[2] The Circuit Court granted Kalili's Motion to Sever Counts 2 and 3, to be tried separately from Count 1.

Count 1, the jury reached a verdict finding Kalili guilty of Reckless Manslaughter,[3] in violation of HRS § 707-702(1)(a).[4]

On September 8, 2016, Kalili filed a Motion for New Trial. At a hearing on October 26, 2016, the Circuit Court granted the motion. On January 25, 2017, the Circuit Court filed its Findings of Fact, Conclusions of Law (**FOFs/COLs**), and Order Granting Kalili's Motion for New Trial (**Order Granting New Trial**). The State timely appealed.

On appeal, the State contends the Circuit Court erred in granting a new trial, by: (1) concluding that Kalili's Motion in Limine (**MIL**) Number 1 to preclude the testimony of the State's pediatrics expert Dr. Suzanne Starling (**Dr. Starling**) should have been granted, in FOFs 3, 4, 5, and 6, and COLs 2, 4, 6, 16, and 17; (2) concluding that evidence of SRB's prior injuries should not have been admitted into evidence absent expert testimony on Battered Child Syndrome, in FOF 10 and COLs 10, 11, 16 and 17; and (3) concluding that the cumulative effect of prejudicial conduct by the State during the trial prevented Kalili from receiving a fair trial, in FOF 15 and COLs 12, 13, 16 and 17.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve the State's points of error as follows, and affirm.

---

[3]     The Circuit Court granted a Motion for Judgment of Acquittal on second-degree murder, and allowed the included offense of Manslaughter to go to the jury.

[4]     HRS § 707-702(1)(a) (2014) provides, as follows:

> **HRS § 707-702 Manslaughter.** (1) A person commits the offense of manslaughter if:
>
> > (a) The person recklessly causes the death of another person
> >
> > . . . .

(Bolding in original).

**FOFs and COLs on the admission of Dr. Starling's testimony**

The State contends that the Circuit Court erroneously concluded that Dr. Starling's testimony was improperly admitted at trial. The State argues that none of the following FOFs on this issue are supported by the evidence in the record:

3. In forming her expert opinions and conclusions, Dr. Starling reviewed most, if not all, of the State's case file. This includes the police reports, witness statements and Defendant's multiple statements.

4. A significant portion of the material reviewed by Dr. Starling was inadmissible at trial and also prejudicial.

5. Although the Court allowed the State to call Dr. Starling as an expert witness, it would not allow the State to qualify her as an expert in the area of child abuse.

6. Furthermore, the Court limited Dr. Starling's testimony only to matters of purely medical evidence -- meaning she could not testify as to her review of the police reports, witness statements and Defendant's statements.

In addition, the State disputes the following COLs:

2. The court concludes that the mode of analysis employed by Dr. Starling was possibly tainted by her review of inadmissible and prejudicial non-medical evidence.

. . . .

4. The court concludes that in its attempts to limit Dr. Starling's testimony to only those matters concerning purely medical evidence, it prevented the jury from being able to fully and properly evaluate the matters upon which Dr. Starling based her expert opinion.

. . . .

6. The court concludes that Defendant's Motion *In Limine* #1 to preclude the testimony of Dr. Starling should have been granted because her expert opinions were based in large part upon irrelevant, inadmissible and prejudicial evidence.

. . . .

16. The court concludes that the combination of: (1) permitting Dr. Starling to testify as an expert

> witness; and (2) admitting evidence of the decedent's prior injuries without properly founded expert testimony with respect to the Battered Child Syndrome; and (3) the cumulative effect of prejudicial conduct by the prosecution during the trial prevented Defendant from receiving a fair trial.
>
> 17.    Based on the foregoing, and in the interests of justice, the court grants Defendant's request for a new trial.

(Italics in original).  The State's contentions as to these FOFs and COLs are without merit.

On appeal, the granting of a new trial is reviewed for abuse of discretion:

> The granting or denial of a motion for new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion.  It is well-established that an abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.
>
> Furthermore, at a hearing on a motion for new trial, the trial court acts as the trier of fact.
>
> In this jurisdiction, a trial court's FOFs are subject to the clearly erroneous standard of review.  An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed.  And where there is substantial evidence, which is credible evidence of sufficient quantity and probative value to justify a reasonable person in reaching conclusions that support the FOFs, the FOFs cannot be set aside.  Moreover, an appellate court will not pass upon issues dependent upon credibility of witnesses and the weight of the evidence; this is the province of the trial judge.
>
> A trial court's conclusions of law, however, are reviewed de novo, under the right/wrong standard of review.

State v. Hicks, 113 Hawaiʻi 60, 69-70, 148 P.3d 493, 502-03 (2006) (format altered) (internal quotation marks, brackets and citations omitted).  A COL that is supported by the trial court's FOFs and "that reflects an application of the correct rule of law will not be overturned."  Dan v. State, 76 Hawaiʻi 423, 428, 879 P.2d 528, 533 (1994) (internal quotation marks and citations omitted).

As to FOF 3, the State fails to present argument that FOF 3 is not supported by substantial evidence. The State concedes that Dr. Starling reviewed the items described in FOF 3, and essentially disagrees with the Circuit Court's characterization that Dr. Starling reviewed "most, if not all" of the State's case file. FOF 3. The State argues that FOF 3 is clearly erroneous because there was no evidence that "these items constituted the entirety or the majority of the State's case file." On a motion for new trial, the trial court acts as a factfinder, and we do not pass on how it weighed the evidence in its finding. See Hicks, 113 Hawaiʻi at 69, 148 P.3d at 502. The record reflects substantial evidence to support this finding, and this argument is without merit.

As to FOF 4, the State similarly challenges the Circuit Court's characterization of the pertinent evidence, and use of the term "significant," arguing: "FOF 4 is clearly erroneous in that it characterizes a significant portion of the materials reviewed by Dr. Starling as 'inadmissible'" because "[o]n the contrary, a significant portion of the material reviewed by Dr. Starling was either admitted or deemed admissible" at the MIL hearing and at trial. We do not pass on how the Circuit Court weighed the evidence as the factfinder on a motion for a new trial. See id. The record reflects substantial evidence to support this finding, and this argument is without merit.

As to FOF 5, the State disagrees with how the Circuit Court summarized its own MIL ruling, as not allowing the State to qualify Dr. Starling as an expert in the area of child abuse. This argument is without merit. The State asserts that "[m]ore accurately," the Circuit Court prohibited the State "from eliciting the words 'child abuse': from any witnesses," which the State concedes "had the effect of preventing the State from qualifying [Dr. Starling] as such." The State's perception of imprecision in the Circuit Court's finding does not render FOF 5

5

clearly erroneous.  As to FOF 6, which the State acknowledges "is partially correct" but is "clearly erroneous in form and spirit" due to its incompleteness where "only the State was limited and not the defense" -- this argument, based again on the State's perception of imprecision, is without merit.  A litigant's disagreement with the factfinder's own summary of its rulings does not render that finding clearly erroneous.  See id.

As to COLs 2, 4, and 6, the Circuit Court concluded that Dr. Starling's analysis was "possibly tainted" by her view of inadmissible, prejudicial, non-medical evidence, and noted that the court's attempts to limit Dr. Starling's testimony during trial to "purely medical evidence" only, had the effect of preventing the jury from fully evaluating her expert testimony; the Circuit Court ultimately concluded that Dr. Starling's testimony should have been precluded where her "expert opinions were based in large part upon irrelevant, inadmissible, and prejudicial evidence."  The State claims the Circuit Court's COL 2 that Dr. Starling's testimony was "possibly tainted," is erroneous because it "lacks support in the record" and consists of "mere speculation and conjecture[.]"  This COL is more accurately an FOF, or a mixed question of fact and law, for which the clearly erroneous standard of review applies.  See State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019) (a conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case); Kilauea Neighborhood Ass'n v. Land Use Comm'n of the State of Hawaii, 7 Haw. App. 227, 229, 751 P.2d 1031, 1034 (1988) (accuracy of label affixed by agency as a finding of fact or conclusion of law freely reviewable by the appellate courts under the clearly erroneous standard).  The Circuit Court's finding in FOF 3 that Dr. Starling had reviewed non-medical evidence constitutes substantial evidence to support COL 2.  See

Rodrigues, 145 Hawai'i at 494, 454 P.3d at 435. The Circuit Court's determination that the evidence reviewed by Dr. Starling was "irrelevant, inadmissible, and prejudicial" and ultimate conclusion that her testimony should have been precluded, were not clearly erroneous and were within the court's province as the factfinder on a motion for new trial. See Hicks, 113 Hawai'i at 69, 148 P.3d at 502.

COL 4 is more accurately a FOF, and COL 6 is a mixed question of fact and law; both COLs are not clearly erroneous. See Rodrigues, 145 Hawai'i at 494, 454 P.3d at 435. COL 4 contains the Circuit Court's own assessment and observation of how its preliminary MIL ruling regarding Dr. Starling proved to be unworkable during the trial. The State disagrees with this conclusion, arguing that there was "no connection" between Dr. Starling's opinions and what was precluded. In COL 4, the court noted that its attempts to keep Dr. Starling's testimony within the confines of the MIL ruling prevented the jury from fully evaluating the bases for the opinion. The State asserts that it was constrained from having Dr. Starling explain the full basis for her opinion but the defense was not similarly constrained; and the State objects to the Circuit Court's finding and conclusion that Dr. Starling's opinions were "based in large part on irrelevant, inadmissible, and prejudicial evidence[.]" COL 6. The State's arguments do not show how or why COLs 4 and 6 are not supported by substantial evidence and thus clearly erroneous. We do not pass upon these COLs where the Circuit Court appropriately weighed the evidence and drew conclusions from the trial record as the factfinder on a motion for a new trial. See Hicks, 113 Hawai'i at 69, 148 P.3d at 502.

The State's challenge to COLs 16 and 17 are discussed infra.

**FOF and COLs regarding expert testimony on Battered Child Syndrome**

The State contends that the Circuit Court erred in FOF 10 and COLs 10 and 11, that evidence of SRB's prior injuries should not have been admitted into evidence absent expert testimony on Battered Child Syndrome. This contention is without merit.

FOF 10, COLs 10 and 11 state:

10. Evidence of the decedent's prior injuries which did not contribute to her death was elicited from several witnesses, including Dr. Eric Nino, Dr. Constance Nesbitt, Dr. Rachel Lange and Dr. Starling.

. . . .

10. When there is properly admitted expert testimony with respect to Battered Child Syndrome, a child decedent's prior injuries could be admissible to show intentional infliction or lack of accident of the fatal injury. *State v. Martinez*, 101 Hawai'i 332, 341, 68 P.3d 606, 615 (2003).

11. In the instant case, allowing evidence of the decedent's prior injuries was error because there was no expert testimony with respect to the Battered Child Syndrome.

(Italics in original).

The State argues FOF 10 is clearly erroneous because it improperly "suggests" that the State elicited testimony of prior injuries from all the doctors in this case, which the State claims is "not true." We do not pass on the Circuit Court's weighing and assessment of the evidence, as the factfinder on a motion for a new trial. See id. The challenge to FOF 10 is without merit.

COL 10 is an accurate statement of law from State v. Martinez, 101 Hawai'i 332, 341, 68 P.3d 606, 615 (2003). The State presents no argument as to why COL 10 is wrong, and any alleged error is thus waived. See Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7) ("Points not argued may be deemed waived."). In COL 11, where the Circuit Court concluded allowing the evidence of prior injuries was error without expert testimony

on Battered Child Syndrome, the State argues that the admission of SRB's prior injuries was not error because it was part of Dr. Starling's opinion even without the Battered Child Syndrome testimony. The State's argument contradicts the applicable law in <u>Martinez</u> and is without merit. <u>See</u> 101 Hawaiʻi at 341-43, 68 P.3d at 615-17.

**FOFs and COLs on prosecutorial misconduct**

The State contends the Circuit Court erred in FOF 15, and COLs 12, 13, 16 and 17 in concluding that a new trial was required where the cumulative effect of prejudicial conduct by the State during the trial prevented Kalili from receiving a fair trial. These contentions are without merit.

FOF 15, and COLs 12, 13, 16 and 17 state:

15. The struck questions, struck comments and motions for mistrial involved matters of significance which the jury was called upon to decide.

. . . .

12. Although instructions by the court to disregard and strike improper or prejudicial questions are presumed to be adhered to by the jury, "the cumulative weight of such errors may create 'an atmosphere of bias and prejudice which no remarks by the trial court could eradicate.'" *State v. Kahalewai*, 55 Haw. 127, 129, 516 P.2d 336, 338 (1973).

13. The court concludes that the cumulative effect of prejudicial conduct by the prosecution going to the issue of guilt was so strong that it may not have overcome the presumption that the conduct was rendered harmless by the curative remarks of the court.

. . . .

16. The court concludes that the combination of: (1) permitting Dr. Starling to testify as an expert witness; and (2) admitting evidence of the decedent's prior injuries without properly founded expert testimony with respect to the Battered Child Syndrome; and (3) the cumulative effect of prejudicial conduct by the prosecution during the trial prevented Defendant from receiving a fair trial.

17. Based on the foregoing, and in the interests of justice, the court grants Defendant's request for a new trial.

(Italics in original)

The State's challenge to FOF 15 -- where the Circuit Court found that the stricken improper questions and comment, and prior motions for mistrial involved significant matters for the jury to decide -- is without merit. The findings in FOF 15 were within the discretion of the trial court to assess as the factfinder on a motion for new trial and are sufficiently supported by the record. See Hicks, 113 Hawaiʻi at 69, 148 P.3d at 502.

COL 12 is an accurate statement of law, and the State has not presented any argument as to why COL 12 is wrong; thus, any error is waived. See HRAP Rule 28(b)(7). COL 13, where the Circuit Court concluded that the "cumulative effect" of the State's misconduct may not have been overcome by the presumptive curative effect of jury instructions, was not wrong. See Hicks, 113 Hawaiʻi at 70, 148 P.3d at 503. The "cumulative effect" of at least ten instances[5] of the Circuit Court striking questions or argument by the State and denying mistrial motions, was not insubstantial, in the Circuit Court's assessment. The State claims, however, that only four out of the ten instances "arguably involved matters of significance[.]"

"The term 'prosecutorial misconduct' is a legal term of art that refers to _any_ improper action committed by a prosecutor, however harmless or unintentional." State v. Conroy, 148 Hawaiʻi 194, 201, 468 P.3d 208, 215 (2020) (internal quotation marks in original) (emphasis added) (quoting State v. Udo, 145 Hawaiʻi 519, 534, 454 P.3d 460, 475 (2019)). It is not a meritorious argument to minimize the nature of or downplay the number of times the court had to strike matters and/or rule on mistrial motions, in the face of at least _ten_ separate incidents of apparent or potential prosecutorial misconduct – not an

---

[5] Kalili agrees with the State's recitation of ten occasions of stricken questions and arguments, and mistrial motions, but claims there were more instances of misconduct, and describes them. See Answering Brief at pp. 6-12.

insignificant amount.  Our review of the record reflects the Circuit Court gave the State numerous warnings, and admonitions during trial, and expressed frustration with the inability of the State to conform its questions and arguments to the MIL rulings. See FOFs 14 and 15.[6]

The record also reflects that Kalili made five motions for mistrial.  On the second motion for mistrial, where the State improperly used the term "assault" in questioning the medical examiner who conducted the autopsy of SRB, the Circuit Court warned the prosecutor as follows:

> THE COURT:  <u>I'm going to respectfully deny any defense motion for mistrial</u> . . . .
>
> . . . .
>
> THE COURT:  Yes I agree it's a clear violation. <u>The word "assault" should not be in this case</u>.  And I -- you [the State] better have -- you better have cautioned Ms. Lange that she's not even to mention manner of death is homicide.
>
> [PROSECUTOR]:  I did.
>
> . . . .
>
> THE COURT:  . . . But this thing about assault, <u>you better watch yourself, Ms. [Prosecutor].  I'm going to deny the motion for mistrial 'cause I think declaring a mistrial based on this one thing is too drastic</u>.  I've struck the question, I've struck the answer, and I've told the jury to disregard it.  <u>But you better watch yourself, Ms. [Prosecutor].  You were warned about this as Mr. [Defense Counsel] just said</u>.
>
> Proceed.
>
> (Bench conference concluded.)

---

[6]     FOFs 14 and 15 state:

14.   There were multiple occasions during the trial, including during closing argument, where questions or comments from the prosecution needed to be struck and the jury ordered to disregard.  This led to multiple subsequent denials of motions for mistrial made by the defense.

15.   The struck questions, struck comments and motions for mistrial involved matters of significance which the jury was called upon to decide.

> THE COURT:  <u>Again the last question and answer are stricken from the record.  The jury will disregard it in its entirety.  It will play no part in your deliberations or consideration of this case</u>.

(Emphases added).

On the third motion for mistrial where the State improperly used the term "inflicted" when questioning the medical examiner about injuries, the Circuit Court warned the prosecutor again, expressing its frustration as follows:

> [DEFENSE COUNSEL]:  Your Honor, at this time <u>I make another motion for mistrial based on the phrase "must have been inflicted</u>."
>
> THE COURT:  You mean the word "inflicted"?
>
> [DEFENSE COUNSEL]:  Yeah.
>
> THE COURT:  <u>I don't know how many times you need to be warned, Ms. [Prosecutor].  I mean I really don't.  I corrected you once when Mr. [Defense Counsel] didn't even object</u> about -- what was it?  What was it?  It wasn't --
>
> . . . .
>
> THE COURT:  . . . But the word was -- it was "inflicted" -- and I corrected that -- versus "falling."
>
> All right.  <u>I'm going to respectfully deny the motion for mistrial</u>, but you've made your record.
>
> . . . .
>
> THE COURT:  You know, and <u>we're getting into cumulative here.  Uh, you slip up one more time, I tell you [the State] right now I'm going to declare a mistrial in a heart beat</u>.
>
> I'm going to strike the question from the record and tell the jury to disregard.
>
> (Bench conference concluded.)
>
> THE COURT:  Ladies and gentlemen, <u>Ms. [Prosecutor]'s last question is stricken from the record.  You will disregard it in its entirety.  It will play no part in your deliberations or consideration of this case</u>.

(Emphases added).

On the fourth motion for mistrial, the State improperly questioned the medical examiner about SRB's anal opening being "very large," which the Circuit Court ruled was "objectionable."

12

The Circuit Court responded to the State's attempt to justify the improper question, as being "ridiculous." The record reflects the Circuit Court at this point was exasperated by the State's repeated inability to conform its questioning to its rulings.[7]

---

[7] The transcript reflects the following:

> [PROSECUTOR]: Okay. <u>Now Mr. [Defense Counsel] asked you about the anal injuries that were reflected in the medical records. There was an indication that the anal opening for [SRB] was very large; correct?</u>
>
> [DEFENSE COUNSEL]: Objection, Your Honor. Your Honor, may we approach.
>
> THE COURT: Okay.
>
> (Bench conference begun.)
>
> [DEFENSE COUNSEL]: Your Honor, <u>I have to move for a mistrial again</u>. This is something we explicitly covered in motions in limine.
>
> . . . .
>
> THE COURT: You cut her off mid-question . . . You opened up the topic of an anal injury or something, and she agreed with you that there was no anal injury, et cetera.
>
> <u>I'm denying your motion for a mistrial because you brought it up, and it's fair redirect to ask questions about it unless they're objectionable. That question is objectionable in my view even though she didn't finish it</u>.
>
> <u>I don't know where you're going with it, Ms. [Prosecutor]. I'm going to preclude you from getting into that area even though he opened it up --</u>
>
> [PROSECUTOR]: I was gonna --
>
> THE COURT: -- unless you can persuade me otherwise.
>
> [PROSECUTOR]: I was going to ask what caused the anal opening to --
>
> THE COURT: Yeah. That's ridiculous. <u>That's -- you want a mistrial? I'll let you ask the question</u>.
>
> [PROSECUTOR]: Okay.
>
> THE COURT: <u>I'm denying your motion for mistrial</u>. I'm going to strike her partial question from the record and tell the jury to disregard and you're gonna move
>
> (continued...)

Following the medical examiner's testimony, before Dr. Starling was called to the stand, the Circuit Court took pains again to articulate the permissible bounds of examination, warning the prosecutor that:

> [I]f I were you, . . . I would be very careful about how you examine Dr. Starling because right now you're about this close to a mistrial because there have been -- how many -- three motions -- three or four motions for mistrial already . . . all of which I've denied or stricken things from the record. You're about this close. And the danger of you doing something that's going to cause a mistrial with this witness is more intense than any of your other witnesses. I think that should be obvious to you and everybody else in this case or anybody who's ever done any trials at all. So I strongly suggest that you prepare carefully for this witness.

Given this record, the Circuit Court's mixed finding and conclusion in COL 13 that the cumulative prejudicial effect of the State's misconduct was significant enough to overcome the presumption that the Circuit Court's repeated curative instructions were effective -- was not clearly erroneous. <u>See Rodrigues</u>, 145 Hawai'i at 494, 454 P.3d at 435.

---

[7](...continued)
on to another area.

> [PROSECUTOR]: <u>Can I at least ask about the injuries</u> and the fact that --
>
> THE COURT: The injuries to what?
>
> [PROSECUTOR]: The report of the injuries.
>
> THE COURT: To what?
>
> [PROSECUTOR]: <u>The anal injuries</u>.
>
> THE COURT: <u>No</u>.
>
> <u>Okay. You know what, Ms. [Prosecutor], go ahead. Go ahead. Go ahead. Do it. Do it</u>.
>
> (Bench conference concluded.)
>
> THE COURT: <u>The last question or partial question from Ms. [Prosecutor] is stricken from the record. The jury will disregard it in its entirety</u>.

(Emphases added).

14

Lastly, the State's COLs 16 and 17 contained the Circuit Court's ultimate conclusion that the combination and cumulative effect of all of the issues regarding admission of Dr. Starling's testimony, evidence of SRB's prior injury without the required foundational expert testimony, and the "prejudicial conduct by the prosecution during the trial" -- denied Kalili a fair trial, and a new trial was required. Based on our review of the record, we conclude that these COLs are not wrong. The nature of the State's misconduct was such that the jury heard multiple, interrelated comments and questions alluding to Battered Child Syndrome on issues that it was to decide, i.e., whether SRB's injuries were inflicted as opposed to accidental and the relevance and weight of SRB's prior injuries. The Circuit Court did not err in concluding that the nature and cumulative effect of the State's improper comments and questions, despite prompt instructions to disregard, created an "atmosphere of bias and prejudice which no remarks by the trial court could eradicate." State v. Pasene, 144 Hawaiʻi 339, 365, 439 P.3d 864, 890 (2019) (quoting State v. Kahalewai, 55 Haw. 127, 129, 516 P.2d 336, 338 (1973)). In light of this record, the Circuit Court did not abuse its discretion in granting a new trial. See Hicks, 113 Hawaiʻi at 69-70, 148 P.3d at 502-03; Dan, 76 Hawaiʻi at 428, 879 P.2d at 533.

Therefore, IT IS HEREBY ORDERED that the Findings of Fact, Conclusions of Law and Order Granting Defendant-Appellee Joshua Kalili's Motion for New Trial filed on January 25, 2017, by the Circuit Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, November 19, 2021.

| On the briefs: | /s/ Lisa M. Ginoza |
| | Chief Judge |
| Kelsi Guerra | |
| Deputy Prosecuting Attorney | /s/ Clyde J. Wadsworth |
| for Plaintiff-Appellant | Associate Judge |
| | |
| Myles S. Breiner | /s/ Karen T. Nakasone |
| for Defendant-Appellee | Associate Judge |